## JOHN H. WHETSTONE v. THE OTTAWA UNIVERSITY.

1. CORPORATION; POWERS; *Articles of Incorporation; Construction of Words Used.* Where in preparing a certificate of incorporation, the corporators employ only the words used in the statute to describe the general purposes of such incorporation, it will be presumed that they intended to create a corporation of the same general nature and with the same general powers granted by the statute, rather than that by such words they sought to apply special limitations on the powers of the corporation.

2. TOWN COMPANY; *Donation of Lots.* A donation of lots by a town-site corporation, with no special limitation on its powers, is not necessarily *ultra vires.*

3. ——— *Purposes of Donation.* Where the direct and proximate tendency of certain improvements sought to be obtained by the donation is the building-up of the town and the enhanced value of the remaining property of the corporation, the donation is within the powers of the corporation, and this though the improvements are to be made outside of the town site.

4. ——— A donation by the Ottawa Town Company to the Ottawa University of one hundred lots to aid in the erection of a school building outside of the town site, and distant therefrom less than half a mile, was not *ultra vires.*

5. ACTS OF CORPORATION, *Bind Stockholders.* An act within the powers of a corporation, when regularly done, binds both the corporation and stockholders.

6. DEED; *Conveyance; Quitclaim.* Under our statutes any interest in lands may be conveyed by deed, quitclaim or otherwise.

7. BOND—*To Build, or to Convey—Construction of.* A bond with penalty to erect a certain building by a named time, or convey certain specified lots, is, after the time to build has passed, equivalent to a bond with penalty to convey.

8. ——— Such a bond is in equity treated as a contract to convey, which may ordinarily be specifically enforced.

*Error from Franklin District Court.*

ACTION to compel specific performance of a contract to convey certain lots of land, brought by *The Ottawa University* as plaintiff, against The Board of County Commissioners of the County of Franklin, *John H. Whetstone*, W. T. Pickrell, Levi C. Wasson, George S. Holt, J. L. Hawkins, W. W. Roller, The Ottawa Town Company, and Robert Atkinson,

as defendants. The Board of County Commissioners, the Ottawa Town Company, and *Whetstone*, answered. The other defendants made default. The action was tried at the March Term 1873 of the district court. The findings of fact and conclusions of law are set forth in full in the opinion, *infra*. The judgment is as follows:

"It is therefore ordered, adjudged and decreed, that the said John H. Whetstone, W. T. Pickrell, Levi C. Wasson, George S. Holt, J. L. Hawkins and W. W. Roller, defendants, within ten days from the rising of this court, execute and deliver to the said Ottawa University a good and sufficient deed conveying to the said Ottawa University in fee simple all and every the lots, parcels or tracts of land in said petition and in the exhibit thereto mentioned and described, to-wit, [*describing the lots as in the petition and exhibit;*] and in default of the execution and delivery of said deed as aforesaid by the said defendants, it is ordered that this judgment and decree shall have the effect and operation at law and in equity of such conveyance, so as to vest the title to the said premises in the said plaintiff in fee simple. And it is further considered and adjudged that the said plaintiff recover of the said defendants its costs in and about this suit in this behalf expended," etc.

From this decree *Whetstone* alone appealed, and he brings the case here by petition in error.

*C. B. Mason*, and *Sears & Maxwell*, for plaintiff in error:

1. We claim that the Ottawa Town Company had no power to make a deed or donation of the 100 lots to the Ottawa University, and the deed made was *ultra vires*, and therefore void. It is a violation of the grant between the state and the corporation. It may be supererogation to present any argument upon the construction of the powers of a corporation to this court, when it is a maxim, "That a corporation is a mere creature of the statute, and has no powers whatever except those expressly given it, or which are incidental to its existence;" but the recurrence to fundamental principles cannot well be avoided in preparing a brief on the subject. "The principle of the limited power of corporations

21—13 KAS.

is founded on the soundest principles." 30 Eng. L. & Eq., 137; 9 How., 184; 12 Ohio St., 605; 5 Wheat., 636.

A corporation is not only incapable of making contracts which are forbidden by its charter, but in general it can make none which are not necessary, either directly or indirectly, to effect the objects of its creation. (2 Cranch, 154; 10 Wis., 351.) And it is well settled both in England and the United States, that corporations take nothing by implication: (14 Ill., 275; 21 Ill., 205; 21 Penn. St., 19; 21 Conn., 194.) And words that are ambiguous in a charter, are to be construed strongly against the corporators: 2 Black, 723; 9 How., 172.

Said deed is a violation of the charter, as between the managers of the corporation and the stockholders in the corporation. Every act which impairs the contract, whether by the state towards a corporation or by the corporation towards the shareholders, is unconstitutional and void. As to unconstitutionality, see 10 Barb., 28; 20 Ark., 449; 6 Georgia, 130; 13 Penn., 133.

The rights of the majority over the minority, do not extend to the performance of any act not conformable to the principles of the constitution of the corporation: (A. & A. on Corp., §§ 391, 500; 8 Mich., 100.) The power to donate the property of the town company, nowhere expressly appears in their charter. The power cannot be implied as one necessary and incidental to the carrying out of the specific purpose for which the corporation was created. It requires no argument to show that "a donation to the Ottawa University, to enable that corporation to complete a certain building then being erected as a school building, outside of the limits of the town of Ottawa, and more than ¼ of a mile distant from the limits of the property and land held and owned by the Ottawa Town Company, and off from said property and land," is a plain departure from the specific purposes of the charter of the Ottawa Town Company. The very object of the conveyance and transaction between the Ottawa Town Company and the Board of County Commissioners, was in keeping with one of the main purposes of the charter

of the Town Company, *the making of improvements on the town site.* The palpable application of one hundred lots to the benefit of the Ottawa University, is a direct mis-application to any purpose expressed or implied, for which the Ottawa Town Company has an existence. If such a dis-position of the property of the corporation can be made as attempted to be done to the Ottawa University, why may not all the property of the Ottawa Town Company be donated to erect a hospital, or other building, wherever it may be sit-uated ? The principle if allowed to prevail at all, necessarily need have no limit.

If, however, such deed has been made and delivered, by a majority of the stockholders having power to do the business of the corporation, we say that the only powers delegated to the quorum by the by-laws passed, as referred to in the 5th finding of fact by the court, were such powers as were inci-dental to its purposes, and it cannot be implied from the proceedings therein found, that the quorum so constituted should have any other or further powers, than such as were necessary for the legitimate purposes mentioned in its charter. The resolutions and proceedings to which the district court has attached an importance in its decision, were really immaterial to the power of the making of a deed in the year 1868. The proceedings mentioned in the 5th finding of fact occurred, and were adopted April 24th, 1865, and January 10th, 1866. If with reference to the making of this deed, or any other power not incidental to the corporation, these proceedings had taken place, some claim for the validity of such deed might justly be presented, perhaps upon a state of facts showing the assent of the stockholders to the delegation of powers beyond the original charter, but certainly on no other grounds would any shareholder be estopped. It is fairly implied that the district court found that no authority exists in the terms of this charter to dispose of the property of the Ottawa Town Com-pany, in the manner and conveyance made December 30th, 1868, but that such authority was conferred by the proceed-ings of April 1865, and January 1866. That any such powers

are inferential in these proceedings, we confess is beyond our comprehension. These proceedings cannot be reasonably inferred to mean anything more than for convenience of the performance of the legitimate business of the corporation, a small portion of its members should constitute a power capable of performing the business necessary and incidental to the existence and purposes of the corporation. The district court seems to accept these proceedings as the pivot upon which turns the validity of the deed of the Ottawa Town Company to the plaintiff below. Such conclusion of the court is plainly unjustified by the circumstances of the case, and in harmony with the uniform erroneous conclusions of law arrived at by the court throughout. The acts of the majority control only when confined to the ordinary transactions of the company, and consistent with the original objects of its formation, but cannot exceed the authority in the charter. As against the plaintiff in error, nothing obligatory upon him could occur without his assent in any event. If present, but protesting, he was not bound by the act of the meeting of December 30th, 1868. If not present he cannot be regarded as assenting to the act of the meeting. (4 Metcalf, Mass., 164.) The shares of stock owned by the plaintiff in error, represent, 1st, property, 2d, rights and privileges, of which he cannot be divested except by his own consent, and in the exercise of which rights the law will protect him. 43 N. H., 520; 29 Vt., 545; Redfield on Rlys., 92; 18 Barb., 312; 5 Eng. Rly. Cases, 573.

2. But if the Town Company had the power to make a deed to the University on December 30th, 1868, and if no stockholder had the right to complain of the act of the majority on that day, we claim then, that the facts found by the court do not show any title or interest in the 100 lots in the plaintiff below, as against the plaintiff here. The deed intended and purports to convey nothing more than a *bare possibility*, and that possibility the mere right of an action of a party having no legal interest in the land. The conveyance made on that day by the Town Company, was a simple quit-

claim deed of the 100 lots. A quitclaim deed carries with it nothing more than that which is then in possession of the grantor. Hence the grantee always requires an express covenant if he expects to hold the grantor, and the grantor always gives a quitclaim deed when he intends to exempt himself from liability. A quitclaim deed presupposes a previous or precedent conveyance, and he who purchases land is held bound by the maxim *caveat emptor*, and if he means to hold the grantor, he must exact express covenant. It cannot be successfully claimed that the rule of the common law in Kansas, on this subject is abrogated. Neither § 2 nor § 5 of the act concerning conveyances, (ch. 22, Gen. Stat.,) applies to the deed of quitclaim. Such a construction might have been claimed with some force, if the original draft of the act in 1868 by the commissioners to revise had been adopted. [By § 4 of such act, had it been adopted, the words "grant," "bargain" and "sell," or, in other words, a quitclaim deed with those terms expressed, might have had the same effect as certain covenants of warranty, and the rights of a grantee been different: Commissioners' Revision, 261, 262, § 4.] That such provision was not made a part of the act, must be construed to mean that it was not the intention of the legislature expressly to enact any such rule as to the effect of quitclaim deeds. Examining then § 5 of our act relating to conveyances, it cannot reasonable be enlarged to refer to deeds of quitclaim, because the section only relates to deeds where the grantor *by terms of his deed* "*undertakes* to convey to the grantee an indefeasible estate in fee simple absolute." That is, to convey the legal estate, the term used in the statute; and the Town Company undertook to convey no legal estate, nor could they, as the only interest they had was such equitable interest, if any at all, in the land, as they held under the bond. A title-bond even when the purchase-money has all been paid, gives the holder only an equitable interest in the land. (1 Ohio, 423.) Nor do we think the case of *Bayer v. Cockerill*, 3 Kas., 282, under the law as then enacted, is to be construed as contrary to our view thus taken of a quitclaim

deed and legal estate.   If our understanding is correct — and we submit no other is apparent and reasonable, for it is absurd to claim that this quitclaim by its terms, undertakes to convey any such estate as a fee simple absolute — then § 2 can have no application, there being no estate to which the word "heirs" can attach, and this section in its terms clearly only refers to such estate as the grantor then had.

It seems to us the common-law rule must prevail in Kansas, as before stated, and that clearly the Ottawa University acquired no title or right to claim a specific performance in equity of the contract to reconvey.   If as against the grantor in the quitclaim deed the grantee has acquired no rights he could enforce, concerning the after-acquired title, much less can it prevail against Whetstone, who holds the title from a grantor who was the owner of the indefeasible absolute fee simple.   The court in the 2d finding of facts, finds the fee simple in the board of county commissioners of Franklin county.   There was and is but one fee simple at the same time.   It could not be divested by the Ottawa Town Company by any number of deeds, whether quitclaim or otherwise, when there was no fee simple in them to divest, nor could any amount of quitclaim deed-making at such time, except by the board of commissioners, take the fee simple out of where it was vested, or transfer the right to a specific performance of the original agreement to a grantee.   The deed of quitclaim conveying no estate in the land as we have shown, we claim the recording of such deed has no more effect upon a subsequent purchaser of the premises, than a void instrument.

3. The obligation of the board of county commissioners of Franklin county, as shown by the 3d paragraph of facts, and by the bond, is in the alternative, to build a court-house to cost not less than $15,000, on or before the 1st day of January, 1870, or to reconvey in default thereof, to the Ottawa Town Company the 100 lots, or to pay not exceeding $15,000. And the recording of this bond on the 28th day of November, 1865, was constructive notice to all parties.   This bond

is found to be delivered simultaneously with the deed to the board of commissioners, and to be the consideration for the deed, that is, exchanged for the deed. Now certainly before · any default, the Ottawa Town Company had no right to elect which alternative they could or would accept, whether the court-house would be built, or on default require the lots to be reconveyed, or on demand and refusal of commissioners to reconvey, then to resort to the legal remedy at law on the bond. And there has been no recission of the contract in law. The facts found do not constitute a rescission. While the bond is outstanding, unrevoked and uncanceled, there is no mutuality in the acts of the parties creating a rescission of the contract, or a breach upon which a right of action inures to the obligee, as though the contract was rescinded. If the Ottawa Town Company has rescinded or intends to rescind the transaction, it must be shown on their part, or by those claiming under them, that they have rescinded their rights in the obligation. If asking equity, they must show they have equitably performed their part, and thus seek to place all parties *statu quo* before the making of the deed and bond. Not having done this, we claim, on the facts, neither the Ottawa Town Company, nor their grantee are entitled to such legal finding set forth as paragraph 4.

4. This brings us to a consideration of the first two findings of law, in conclusion of our argument in the case on behalf of plaintiff in error. The two taken together substantially find, 1st, That the Ottawa Town Company on January 1st, 1870, could elect to sue on the bond for damages, or for the legal title by reason of the equitable interest; 2d, That such right as the Town Company had by assignment could pass to its grantee. As before stated, the bond was in the alternative. Clearly, the obligor had the right to elect in this contract. The obligation of a bond, being the language of the obligee, shall be construed in favor of the obligor. (2 Pars. on Cont., 510, note 4.) The board had the right to build the court-house, and in case they did not build as stipulated, then they had the right to reconvey, and if this was

the only alternative, undoubtedly an action by a proper party would lie to compel them to reconvey. But that is not this case. *There was still another alternative.* They could keep the lots and be liable on their bond. That which they had failed to do, to build a court-house, they were by the terms of this bond debarred from afterward, (unless perhaps within a reasonable time) choosing to perform. But the terms of this obligation reserved to them the right still to elect not to reconvey, and leave to the obligee the legal remedy on the bond. And the board did elect, and they having elected, the Ottawa Town Company, (had no deed been made to the plaintiff below,) had a clear and adequate remedy at law, and having that would not have been *entitled to equitable* relief, and bring their suit after legal title had been conveyed by the board of commissioners. (Story on Cont., 665, note 2; 7 Johns., 465.) Again, whatever right, title or interest in this transaction the Ottawa Town Company may have had, (and which we claim to have been on Dec. 30th, 1868, or at any other time since, simply rights holden by virtue of the bond, and under that, only the legal right to damages, if the board of commissioners refused to reconvey,) they were not assigned nor could the right to specific performance be assigned by the Town Company, so that the grantee stood subrogated to the rights of the obligee in the bond.

And we now claim, that this judgment ought not to be affirmed, because the well-established rules of a court of equity require, that he can only have a right to a specific performance of a contract who shows a valuable and meritorious consideration as the basis of his claim. It cannot be said that the plaintiff in error is *in pari delictu*, for although no money has been paid by him, his obligation to pay and indemnify sustains his position in contemplation of law, nor can any comparison on this score invidious to him be made, for the plaintiff below must recover on his own equity, and not on want of equity in his adversary. Another maxim is, that " where there is equal equity the law must prevail."

*John W. DeFord*, for defendant in error:

In Whetstone's answer to petition of defendant in error, is this allegation: "This defendant further alleges that the conveyance of the said board of county commissioners to the defendant, of said one hundred lots, was made in good faith, and for a valuable consideration, and that this defendant is the owner thereof, *subject to any equities between the said Board of County Commissioners and the said Ottawa Town Company.*" This admission thus solemnly made by Whetstone, that he holds the lots "subject to any equities between" the county commissioners and the town company, would seem to resolve the whole case into these two questions: 1st, If the Town Company were plaintiff here, would it in equity be entitled to a specific performance by the County Board of the bond of May 12, 1865? If yea, then, 2d, Did the "quitclaim," of December 30, 1868, vest in the Ottawa University a title to the same relief? If both these questions be answered in the affirmative, the judgment should be affirmed:

1. Can it be contended with any show of reason that the county board were not in equity and good conscience bound to perform their contract with the town company? Every principle of justice required them to build the court-house, or, failing in that, to return the lots to the town company, or pay for them, as the latter might elect. (*McNitt v. Clark*, 7 Johns., 465.)

2. Did the "quitclaim" of December 30th, 1868, vest in the University a title to the same decree? The plaintiff in error says "No," alleging that "It was *ultra vires*, beyond the power of the Town Company to make that conveyance, and it therefore was and is void;" that "it is void as against any shareholders not assenting to its execution;" that "it places neither a legal nor equitable interest in the grantee," and that, "the district court's conclusions of law on the rights of the obligee in the bond, or the grantee in the quitclaim deed, are erroneous." But we deem all these objections unsound.

The powers and privileges of the Ottawa Town Company

were conferred by §§ 37, 20, 18, etc., and the limitation thereupon imposed by § 45, ch. 44, Comp. Laws 1862. By § 37 they are "authorized to carry on the business and operations named in their certificate of incorporation, and by the name and style provided in said certificate shall be deemed a body corporate, with succession, and they, and their associates, successors and assigns, shall have the same general corporate powers as are provided in the 20th section of this act, and subject to all the restrictions hereafter provided." Section 20 empowers them to "contract and be contracted with, acquire and *convey at pleasure*, all such real and personal estate as may be necessary *and convenient* to carry into effect the objects of the incorporation, and do all needful acts to carry into effect the object for which it was created; and such company shall possess *all the powers*, and be subject to all rules and restrictions, *provided by this act.*" And § 18 reads, "The stockholders may from time to time, adopt such regulations and by-laws, for the management of the business of the company, as they may see proper," etc. And by § 45 the corporation was restricted in the employment of its stock, means and assets to the "legitimate objects of its creation." The Town Company was incorporated for the "purpose of locating and laying out a town site, and making improvements thereon." These of course were its "legitimate objects." And from the foregoing extracts it appears to have been clothed with ample authority to accomplish them. Was the conveyance of the 97 lots to the University to enable her to complete a college building a quarter of a mile without the limits of the town, within the scope of these "legitimate objects?" The answer to this depends upon the meaning to be given to the words "making improvements thereon." Plaintiff in error claims that the words, "making improvements thereon," mean "only erections upon, or something performed *on* the land itself to ameliorate its condition; such as the erection of buildings, or fences, or necessary grading, or ditching to improve the drainage." But these corporations are never organized for the purpose of locating, laying out and "making improvements,"

in that limited sense, on town sites. Their grand object always is to enhance the value of their lots, by every available expedient, and then make money by selling them. And in view of this fact, it would seem that the term, as here used, was employed in its most liberal sense, and includes the " performance of any act, whether on or off the town site, the direct and proximate tendency of which is to enhance its value in the market." (10 Am. Law Reg., N.S., 506.) And who can doubt that the finishing of the University building, at a distance of only a quarter of a mile from town, and the opening of a school in it, had a "direct and proximate tendency" to enhance the value of lots in Ottawa? At all events the presumption is that it had this tendency, and that the act of the Town Company in making the deed was lawful, until the contrary appears. And even if not so, it would, in this case, make no difference. (22 N. Y., 258.)

3. Again, the plaintiff in error asserts, that the quitclaim of December 30, 1868, is "void as against any shareholder not assenting to its execution." That Whetstone was bound, with or without his assent, by the act of a majority of the meeting, which passed the resolution, directing the execution and delivery of this deed, if otherwise lawful, can admit of no question. It would, in truth, be a singular town company that could not make a conveyance of this kind without the consent of every shareholder.

4. Whetstone further insists that the quitclaim "placed neither a legal nor equitable interest in the grantee," especially as against *him*. The Town Company, he argues, on December 30, 1868, had no interest, but only the "possibility" of one, in the lots, and hence their deed of that date conveyed *nothing*. But a "bare possibility" can be conveyed just as well as an absolute estate in fee simple. "Conveyances of land, or of *any other* estate or *interest* therein, may be *made by deed*." (Sec. 3, ch. 22, Gen. Stat. 1868, and §§ 2, 5, and 6.) And Story tells us that courts of equity "give effect to assignments of trusts and *possibilities* of trusts, and *contingent interests*, and *expectancies*, whether they are in real or in personal

estate." (Story's Eq. Jur., §§ 1040, 1055; 6 Kas., 153; 6 Ohio St., 480; 2 Story, 639; 50 Mo., 31.) But the fact is, that the Town Company, prior to January 1st, 1870, had in these lots a far greater interest than a "bare possibility." They had an estate contingent upon the happening of a condition prece-dent, an estate which would entirely fail, it is true, if the court-house should be built, but which, if it should not, would expand into an absolute estate in fee simple. On the other hand, the county had a fee conditional, which would become unqualified by the erection of the court-house, and would, if they failed in that, shrink into a mere dry legal estate held in trust for the Town Company or its assigns. This was the true state of the property. And to say that the Town Com-pany could not assign an interest of this magnitude in De-cember 1868, is to waste words. It follows then, that the quitclaim deed, granting, as it does, the 100 lots (and not merely whatever interest the grantor had in them,) with the "hereditaments and appurtenances thereunto belonging or in any wise appertaining," wrought a perfect transfer to the University of the bond dated May 12th, 1865, and of all rights, present or future, arising out of it. (47 Mo., 272; 39 id., 365; 49 id., 208; 2 Story Eq. Jur., § 1050.)

5. There is no error in the conclusions of law found by the district court. But suppose it were otherwise, what right has Whetstone to complain of "the findings of the court as mat-ter of law, or the rights of the obligee in the bond, or the grantee in the quitclaim deed?" Surely, *they* can take care of themselves. And so long as they make no objection, Whetstone may well be content. But, even if he could be allowed to fight their battles, no exception was taken to any conclusion of law, and he is therefore presumed to have ac-quiesced in them. (32 Ind., 198; 25 Ind., 516.)

6. The plaintiff in error thinks the county "could keep the lots, and be liable on their bond." But Story says (Eq. Jur., § 751,) "if the contract appears only in the condition of a bond, secured by a penalty, the court will act upon it as an agreement, and will not suffer the party to escape from a spe-

cific performance by offering to pay the penalty," and that such a bond is "not to be discharged by the payment of the penalty." (Id., § 715.) But neither Whetstone nor the county board has ever offered to build the court-house, reconvey the lots, pay the penalty, or do any other act or thing in performance of the obligation. On the contrary, the county has attempted to give the lots to Whetstone for nothing.

The opinion of the court was delivered by

BREWER, J.: The findings of facts made by the court below on the trial of this action are as follows:

1st, That the plaintiff, the Ottawa University, and the defendants, the Board of County Commissioners of the county of Franklin, and the Ottawa Town Company, are each corporations, created under the laws of the state of Kansas.

2d, The board of county commissioners of the county of Franklin, by deed, with full covenants, executed by the Ottawa Town Company, were seized of a good, absolute and indefeasible estate, in fee simple of and in all and singular, the 100 town lots in the town (now city) of Ottawa, particularly described by number, lot, and block, in "Exhibit A," attached to and being a part of the petition.

3d, On the 12th of May, 1865, said board of county commissioners made and delivered to the Ottawa Town Company a bond in the sum of $15,000, conditioned that they or their successors in office should, before the first day of January, 1870, erect on block 85, in the city of Ottawa, a court-house, at a cost of not less than $15,000, or in default thereof to convey to the Ottawa Town Company the 100 lots described in said "Exhibit A."

4th, The deed mentioned in the second paragraph herein, and the bond mentioned in the third paragraph herein, were delivered simultaneously, that is, exchanged the one for the other. There was no consideration whatever paid by said board of county commissioners, either directly or indirectly, to the Ottawa Town Company as a consideration for the lots described in the deed aforesaid, nor have the conditions of the bond aforesaid been complied with — that is, no court-house has been erected, or money paid, or conveyance made, as provided for.

5th, At a meeting of the Ottawa Town Company held

Monday, April 24th, 1865, the following proceedings were had: "Moved and seconded, that regular meetings of the company shall be held on Monday evening, at 7.30, and that five shall constitute a quorum — carried." And at a meeting held Wednesday, January 10, 1866, it was "Moved and seconded, that hereafter votes of this company be taken by shares, and that each half-share be allowed one vote whenever present, by person or by proxy—carried." These proceedings were recorded in a book furnished and kept by the company for that purpose, and in that book there is no record of any meeting after June 27th, 1867.

6th, The property of the Ottawa Town Company was divided into twenty shares, and on and before the 30th of December, 1868, the twenty shares of the Ottawa Town Company's stock were held as follows: By C. P. Kalloch, one share; by E. J. Nugent, three shares; by J. C. Richmond, one half-share; by F. Cobb, one half-share; by E. Cobb, one half-share; by S. C. Pomeroy, one share; by J. T. Jones, one share; by W. Libby, one half-share; by T. J. Southard, one half-share; by J. B. Gordon, one share; by C. C. Hutchinson, one share; by R. D. Lathrop, four shares and one half-share; by C. T. Evans, one half-share; by G. S. Holt, one half-share; by S. T. Kelsey, one half-share; by A. S. Lathrop, one share, and by J. H. Whetstone, two shares and one half-share. The property of the Town Company originally consisted of all the land described by the town plat of Ottawa.

7th, On the 30th of December, 1868, the Ottawa Town Company held a meeting with the following shareholders, present or represented: C. P. Kalloch by I. S. Kalloch, C. C. Hutchinson, J. T. Jones, S. T. Kelsey, J. C. Richmond, E. J. Nugent, J. H. Lane by H. F. Sheldon, and G. S. Holt. The following proceedings were had: "Holt elected secretary *pro tem.* * * * Voted, that a quitclaim deed be given to Atkinson for the benefit of Ottawa University, of 97 lots, previously donated to the county of Franklin. * * * Voted, that if anything accrues from the lots traded to Lathrop, that also be given to Atkinson for the same purpose. * * * Voted, that the secretary *pro tem.* see that the deed be furnished this P.M., and have it signed by the president." John H. Whetstone had notice of this meeting, and was present, just before, or just at the time of the opening, but on account of sickness withdrew, and did not participate.

8th, On the 30th of December, 1868, the Ottawa Town Company, by its president, I. S. Kalloch, and by its secretary

*pro tem.*, G. S. Holt, executed and delivered to Robert Atkinson as treasurer of the Ottawa University, for the sole use and benefit of the Ottawa University, a quitclaim deed of the 97 lots referred to in the seventh paragraph herein, being 97 of the 100 lots before that time conveyed by the said Ottawa Town Company to the board of county commissioners of Franklin county. That there was no consideration whatever paid by the Ottawa University, either directly or indirectly, to the Ottawa Town Company for the lots aforesaid, but the quitclaim deed so made was made as a donation to the Ottawa University to enable that corporation to complete a certain building then being erected as a school building outside of the limits of the town of Ottawa, and more than one-fourth of a mile distant from the limits of the property and land held and owned by the Ottawa Town Company, and off from said property and land.

9th, On the 9th of August, 1870, the board of county commissioners of the county of Franklin made and delivered to John H. Whetstone a quitclaim deed to 100 lots mentioned and referred to in the second paragraph herein, but without any consideration paid therefor by the said Whetstone, or by any person for him, either directly or indirectly, to said board of county commissioners, or to any one, for the use and benefit of Franklin county, and without any agreement or promise, either express or implied, to pay or cause to be paid at any time or in any manner any valuable consideration, except that on the same day the said Whetstone, with W. T. Pickrell as his security, executed and delivered to said board of county commissioners a bond in the sum of $15,000, conditioned that they will, in consideration of said quitclaim deed, save harmless the board of county commissioners of the county of Franklin from all liability, by way of damages or expenses incurred or which may be incurred or expended by reason of the giving of the bond by said board, referred to and described in the third paragraph herein.

10th, On the 10th of August, 1870, John H. Whetstone executed and delivered to W. T. Pickrell a quitclaim deed for lots 18 and 20 in block 72, and on the 15th of August 1870 said Whetstone executed and delivered to George S. Holt a quitclaim deed for lots 7, 9 and 11, in block 69, and on the 15th of August 1870 said Whetstone executed and delivered to W. W. Roller and J. L. Hawkins a quitclaim deed for lots ———— in block ——, and on the 17th of August 1870 John H. Whetstone executed and delivered to

L. C. Wasson a quitclaim deed for lots 1, 3, 5, 7 and 9, in block 81, part of the lots described in quitclaim deed from board of county commissioners of the county of Franklin to said Whetstone, referred to and described in the ninth paragraph herein; and all the deeds, bonds and writings herein referred to were duly recorded in the office of the register of deeds of Franklin county, in the order of their dates respectively.

11th, On the 30th of December, 1868, at the time of the meeting of the Ottawa Town Company, the following were resident stockholders or shareholders residing in and in the vicinity of the town of Ottawa: E. J. Nugent, J. C. Richmond, E. Cobb, J. T. Jones, C. C. Hutchinson, G. S. Holt, S. T. Kelsey, J. H. Whetstone and A. S. Lathrop. In all of the meetings of the Ottawa Town Company, A. S. Lathrop had represented the interest of R. D. Lathrop, and said A. S. Lathrop had no notice of the meeting above referred to, and protested in his own behalf, and for R. D. Lathrop, against the attempted conveyance or transfer of the interest of the Ottawa Town Company to Robert Atkinson, treasurer of the Ottawa University, of the property referred to. John H. Whetstone also opposed the conveyance last above mentioned, and made that fact known to other shareholders of the company, and to Robert Atkinson, and has never ratified the action of the Town Company.

The conclusions of law found by the district court on such trial are as follows:

1st, After the first of January, 1870, the Ottawa Town Company had an equitable interest in the 100 lots, and could elect to sue for the legal title, or for the recovery of the penalty of $15,000 fixed in the bond.

2d, The Ottawa Town Company claiming title to the 100 lots, could sell and convey its interest therein, though not in actual possession, and not holding the legal title, and the action of its grantee for the legal title, can be maintained by the grantee if it could have been by the grantor.

3d, The officers and a quorum of the stockholders of the Ottawa Town Company, could make a conveyance of the legal title or equitable interest of that corporation in the 100 lots, and no individual stockholder of the corporation can maintain an action to cancel or set aside such conveyance, though the same was made for an inadequate consideration.

4th, The conveyance by the Board of County Commission-

ers to John H. Whetstone vested in the grantee no greater title or interest than that held by the county at the time; and the bond for re-conveyance, and the deed to the Ottawa University being duly recorded, said Whetstone had full knowledge of the equities in favor of the Ottawa Town Company and Ottawa University, and the Ottawa University can therefore maintain the action against said Whetstone, if the Ottawa Town Company could maintain a like action against the Board of County Commissioners.

The court therefore finds for the plaintiff.

The first finding of fact sets forth, among others, that the Ottawa Town Company is a corporation created under the laws of the state of Kansas. The following is a copy of the article of incorporation filed with the secretary of state, on the 6th of September, 1864, which by stipulation of the parties is to be taken as one of the facts found in this case:

"THIS IS TO CERTIFY that the undersigned have formed themselves into an association or body corporate, for the purpose of locating and laying out a Town Site, and making improvements therein. The particular tracts of land to be obtained as a Town Site, are the east half of section thirty-five (E.½ sec. 35), and the west half of section thirty-six (W.½ sec. 36,) both of township seventeen south, (T. 17 s.,) and range nineteen east (R. 19 e.,) upon what is known as the Ottawa Reservation, in the county of Franklin, in the State of Kansas. The name of the Company or body corporate, shall be 'The Ottawa Town Company.'

"In witness whereof, we the undersigned, have hereunto interchangeably set our hands and seals this first day of September, Eighteen Hundred and Sixty-Four.

　　　　　　　　　CLINTON C. HUTCHINSON, [Seal.]
　　　　　　　　　JOHN C. RICHMOND, [Seal.]
　　　　　　　　　ISAAC S. KALLOCH, [Seal.]
　　　　　　　　　CHARLES T. EVANS, [Seal.]
　　　　　　　　　ASA S. LATHROP, [Seal.]"

As none of the testimony is before us, except so far as it is shown by the stipulation just cited, the only question is, whether upon the pleadings and findings of fact the defendant in error, the Ottawa University, ought to have recovered a judgment against the plaintiff in error. Upon this the plaintiff in error makes the following points:

22—13 KAS.

" 1st, That the deed of December 30th, 1868, under which plaintiff below claims, is *ultra vires* of the corporation, and therefore void.

" 2d, That it is void as against any shareholder not assenting to its execution.

" 3d, That as a deed of quitclaim, it places neither a legal nor equitable interest in the grantee, and especially as against the plaintiff in error.

" 4th, That the findings of the court as matter of law, on the rights of the obligee in the bond, or the grantee in the quitclaim deed, are erroneous."

The first is the principal question, and it is one of no little difficulty. It is insisted that there is no express power conferred to donate the property of the corporation, nor to use it for the purpose of making improvements elsewhere than within the limits of the town site, nor is the power necessary and incidental to the carrying out of the specific purpose for which the corporation was created. Looking simply at the articles of incorporation, and regarding the words used therein as selected by the corporators with especial reference to a limitation of the powers of the corporation, and this argument is strong. Power is given to locate and lay out a town site and make improvements thereon. A town can be located and laid out, and improvements made in it, without the donation of a single lot, and without the use of a single dollar's worth of property in making of outside improvements. We are fully aware of the rule that corporations take nothing by implication, and that it is the duty of courts, especially in this day, when so much of the business of the country is carried on by corporations and so much of its wealth held by them, to see to it that the powers of a corporation are not exercised beyond its charter, but are kept within the limits which the legislature has prescribed. Only in this way can the rights of the stockholders be protected against the illegal action of the directors, or of the minority of the stockholders against similar action of the majority. On an examination we find that the words used in the articles of incorporation under consideration were taken

1. Articles of incorporation. Powers of corporation.

from the statute, where they stand as descriptive of the general purposes of such a corporation. (Comp. Laws, 372, ch. 44, § 37.) ' This section reads: "When any number of persons * * * associate themselves together *for the purpose of locating and laying out a town-site and making improvements therein,* they shall under their hands and seals make a certificate," etc., and when incorporated "shall have the same general corporate powers as are provided in the twentieth section of this act, and subject to all the restrictions hereafter provided." It would seem then from the adoption of the words of the statute that the corporators intended thereby, not so much a special limitation on the powers of this town-site corporation, as the creation of one of the nature and with the general powers specified in the statute. If special limitations had been sought, additional words would have been used. Turning now to § 20 of the same chapter of the statutes, (the section referred to,) we find that it empowers them to "contract and be contracted with, acquire and *convey at pleasure* all such real and personal estate as may be necessary and convenient to carry into effect the objects of the incorporation, to make and use a common seal, and the same to alter at pleasure, and do all needful acts to carry into effect the object for which it was created; and such company shall possess *all the powers* and be subject to all rules and restrictions provided by this act." And by § 45 of said act it is provided by way of restriction that "no company or association incorporated under the provisions of this act shall employ its stock, means, assets or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation." Now, town-site companies are neither novel nor rare in Kansas. Every county has been the home of several, and the manner of their working and the means employed to accomplish their purposes, are familiar to us all. Nor is Kansas peculiar in this respect. Every western state is full of them. They are private corporations, organized for the purposes of gain. They take real estate, lay it off into lots and blocks, streets and

alleys, induce people to settle and purchase, and by the sale of lots make their profits. Their object is to make gain by the sale of lots, and they may "convey at pleasure such real

2. Donations of lots by town company. estate as may be necessary and convenient to carry into effect this object." If by the donation of one lot they can double the value of the remainder, is not the one lot used directly to accomplish the legitimate object of the corporation? If by donating 100 lots to the county they can secure the county-seat and the erection of county buildings, are they not furthering the very purpose of building up a town? This the counsel for plaintiff in error seem to concede, for thus, they say, they secure improvements *on* the town-site. Here the improvements, to secure which this donation was made, were to be placed from one-fourth to one-half of a mile away from the town. And if there, why not anywhere, urge

3. When donations are not ultra vires. counsel. The purpose of securing improvements *on* the town-site is not simply that the improvements be there, but that thereby the property the corporation has to sell may be enhanced in value. And if the lots were donated to secure the erection of a hospital or school at a remote place, as suggested by counsel, there would be no resultant benefit to the corporation of enhanced value of its unsold lots. It seems to us that this must be the test: If the direct and proximate tendency of the improvements sought to be obtained by the donation is the building-up of the town and the enhanced value of the remaining property of the corporation, the donation is not *ultra vires*. The purpose of the corporation is to build up a town and make gain by the sale of lots. This purpose is directly furthered by such a donation. See as bearing upon the questions here discussed the late case from California (40 Cal., 84,) of *Vandall vs. The Dock Co.*, reported in 10 Am. Law Reg. (N. S.) 506, which in many respects is similar to this. The donation in this case was to aid the Ottawa University in erecting a school building near the town site. It will hardly be doubted that the direct and proximate tendency of such an improvement was to enhance

the value of property in Ottawa. Hence the donation was not *ultra vires.*

The donation being within the powers of the corporation, having been made by the proper officers, and having been 4. Acts of corporation bind stockholders. fully authorized by a vote of the corporation at a regularly called meeting, it follows that all the stockholders are bound by the act. The proceedings on the part of the corporation appear to have been regular. At least no defect is pointed out in them.

The Ottawa Town Company had an interest in these lands, such an interest as is created by a bond to convey. 5. Conveyance; deed. Any interest in land may be conveyed by deed, quitclaim or otherwise. (Gen. Stat., 185, § 3.)

The county had given a bond with penalty to build a court-house before the first of January, 1870, or reconvey 6. Bond in alternative. the lots. The time to build the court-house had passed. It then left the contract of the county a simple bond with a penalty to convey. Equity always treats this as a contract to convey which may ordinarily be specifically enforced, and does not leave the party to his legal remedy on the bond. ( *Waynick v. Richmond,* 11 Kas., 488.)

We see no error in the judgment, and the same will be affirmed.

All the Justices concurring.