CORNING GLASS WORKS v. LUCAS, Commissioner of Internal Revenue.

Court of Appeals of District of Columbia. Argued October 16, 1929. Decided December 2, 1929.

No. 4860.

Laurence Graves, of Washington, D. C., for appellant.

Mabel W. Willebrandt, Asst. Atty. Gen., and C. M. Charest and Sewall Key, both of Washington, D. C., and Morton P. Fisher, of Baltimore, Md., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decision of the Board of Tax Appeals assessing additional income and profit taxes.

Appellant corporation is located at Corning, N. Y., and was organized in December, 1911, under the laws of that state, with a corporate life of 50 years from date of organization. In December, 1920, being in need of money on account of large increase in business, and being unable to borrow from banks, appellant determined to issue preferred stock in the amount of $3,000,000. Thereupon appellant entered into a contract with Estabrook & Co., bankers of Boston, under which the bankers agreed to purchase at a price of $100 per share, and accrued dividends, all or any part of the $3,000,000 of stock not taken by stockholders, the bankers to receive for their services, and as consideration for the contract, the sum of $240,000, to be paid, if the bankers so elected, pro rata as the stock was taken up. This stock was is-

sued to the bankers during the period from January 6, 1921, to March 1, 1921, during which period the agreed compensation of $240,000 was paid the bankers. On or about December 1, 1922, this entire issue of stock was called and retired. Appellant, on account of these payments to the bankers, sought in its income tax returns to deduct $6,000 from its gross income for 1921 and $236,000 from its gross income for 1922. Both deductions were disallowed.

In the year 1922 appellant made a contribution to the Corning Hospital of $25,000. The average number of persons in appellant's employ in that year was 2,167. The population of Corning was 15,000. We here quote from the Board's findings of fact: "Accidents suffered by employees of petitioner were divided into two classes—reported or compensation cases which were those cases where employees were expected to be absent from work more than a week, and minor accidents. There were 796 reported cases in 1920, 463 in 1921, and 574 in 1922. The number of cases involving minor injuries averaged about five times the number of reported cases. The largest part of the injuries resulted from hot flying glass, also injuries resulting from the operation of machinery. Petitioner paid to the Corning Hospital for treatment of its employees, $1,308.23 in 1921 and $586 in 1922. The daily rate of the hospital for rooms was $2.00 per day. Prior and subsequent to 1922 petitioner maintained at its plant a dispensary having four rooms and two beds and employed a full-time nurse. Prior to 1922, it employed a physician who called at the plant twice a day. In 1922, it employed a full-time physician. This physician complained that the facilities furnished him were inadequate and requested that they be enlarged. This would have been very expensive. About this time, the plans for the enlargement of the Corning Hospital were under way and it was determined that it would be better for the corporation to make a contribution to the hospital building fund than to go to the expense of enlarging its dispensary facilities at the plant. The contribution of $25,000 was then made."

In 1922 appellant sought a deduction of the amount of the contribution thus made, as an ordinary and necessary expense in carrying on its trade or business.

■ Within the meaning of the Revenue Act of 1921 (42 Stat. 227), § 234(a) (1), was the $240,000 paid to Estabrook & Co. an ordinary and necessary expense paid or incurred during the taxable year in carrying on its trade or business?

Simmons Co. v. Commissioner of Internal Revenue (C. C. A.) 33 F.(2d) 75, involved facts almost identical with those in the present case. The court said: "While expenses for organization or for obtaining additional capital are frequent in growing and successful interprises, we think it clear that they are not 'ordinary and necessary expenses' in the productive operations of such concerns within the meaning of the tax laws. * * * We agree with the reasoning of the Board of Tax Appeals by which it reaches the conclusion that invested capital cannot be increased by commissions paid for the sale of its stock or by discount from par to the purchasers of the stock. * * * Such commissions obviously decrease the amount of capital available for the business operations of the concern. They contrast with the ideas contained in 'actual cash,' 'actual cash value of tangible property,' 'paid in or earned surplus and undivided profits.' All these add to the resources of the corporation. Commissions paid for marketing stock simply diminish the net return from the stock issue. Financially, they are equivalent to an issue of stock at a discount from par; the par value must be carried as a liability without an off-setting, equal, amount of cash or property."

In the instant case, appellant sold to Estabrook & Co. preferred stock of the par value of $3,000,000 at a discount of $8 per share; so that appellant received, not $3,000,000, but $2,760,000; in other words, $92 per share. The effect of this transaction was to reduce by the amount of $240,000 the capital available to appellant. In other words, it represents a capital expenditure, and should be charged against the proceeds of the stock, and not be recouped out of operating earnings. The regulations and rulings of the Treasury Department have consistently been to the effect that expenses incident to the sale of the capital stock of a corporation are not "ordinary and necessary expenses incurred in carrying on the business" of such corporation. See articles 21, 101, and 563 of Treasury Regulations 62, promulgated under the Revenue Act of 1921; articles 21, 101, and 563 of Regulations 65, under the Revenue Act of 1924, articles 21, 101, and 563 of Regulations 69, under the Revenue Act of 1926; and articles 41, 121, and 176 of Regulations 74, under the Revenue Act of 1928 (26 USCA § 2001 et seq.). See, also, opinion of Bureau of Internal Revenue

in 1922, I. T. 1198, Cumulative Bulletin I-1, p. 275, to the effect that the commission paid to market preferred stock is a nondeductible capital expenditure.

This interpretation of section 234 (a) (1) of the Revenue Act of 1921 was impliedly approved by Congress through the re-enactment of the section, in unchanged form, in the Revenue Act 1924, § 234 (43 Stat. 253 [26 USCA § 986]), Revenue Act 1926, § 234 (44 Stat. 9 [26 USCA § 986]), and Revenue Act 1928, § 23 (45 Stat. 791 [26 USCA § 2023]). See Paducah Water Co. v. Commissioner of Internal Revenue, 59 App. D. C. ——, 33 F.(2d) 559; Komada & Co. v. United States, 215 U. S. 392, 30 S. Ct. 136, 54 L. Ed. 249; National Lead Co. v. United States, 252 U. S. 140, 40 S. Ct. 237, 64 L. Ed. 496. We therefore affirm the Board on this branch of the case.

Under the facts of this case, was the contribution of $25,000 to the Corning Hospital an ordinary and necessary expense, and therefore deductible from gross income under section 234 (a) (1) of the Revenue Act of 1921?

Under section 214 (a) (11), relating to deductions allowed individuals, "contributions or gifts made within the taxable year to or for the use of * * * any corporation, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * * to an amount which in all the above cases combined does not exceed 15 per centum of the taxpayer's net income as computed without the benefit of this paragraph," are deductible. The Board in its opinion attaches some significance to the fact that, in the case of corporations, contributions or gifts are only deductible when they have "a direct and reasonable effect upon the corporation."

·[4, 5] The reason for not bringing corporations within the provisions of section 214 (a) (11) is obvious. An individual, "in the absence of fraud or duress, can give away his property. Not so with the directors of a corporation as to corporate property." Bassick v. Ætna Explosives Co. (D. C.) 246 F. 974, 993. See, also, 7 R. C. L. 576, § 565. But it is generally recognized, as suggested by the Board, that business corporations may have authority to make donations of money or property to enterprises reasonably calculated to further their general business interest. McGeorge v. Big Stone Gap Improvement Co. (C. C.) 57 F. 262; Taunton v. Royal Ins. Co., 2 Hem. & M. 135;

Hampson v. Price's Patent Candle Co., 45 L. J. Ch. 437; Henderson v. Bank of Australasia, 40 Ch. Div. 170; Ft. Worth City Co. v. Smith Bridge Co., 151 U. S. 294, 14 S. Ct. 339, 38 L. Ed. 167; Derr v. Fisher, 22 Okl. 126, 98 P. 978; Steinway v. Steinway & Sons, 17 Misc. Rep. 43, 40 N. Y. S. 718; Louisville & N. R. Co. v. Literary Soc. of St. Rose, 91 Ky. 395, 15 S. W. 1065; Sherman Center Town Co. v. Russell, 46 Kan. 382, 26 P. 715; Whetstone v. Ottawa University, 13 Kan. 320; Vandall v. South San Francisco Dock Co., 40 Cal. 83; B. S. Green Co. v. Blodgett, 159 Ill. 169, 42 N. E. 176, 50 Am. St. Rep. 146; Merchants' Bldg. Improvement Co. v. Chicago Exch. Bldg. Co., 210 Ill. 26, 71 N. E. 22, 102 Am. St. Rep. 145; Temple St. Cable Ry. v. Hellman, 103 Cal. 634, 37. P. 530.

While a corporation is under no different obligation to secure medical and surgical aid for its employees from that of any individual under like circumstances, yet the power of a corporation employing labor, such as a railroad company, to incur expenses in the employment of medical and surgical aid and the like for employees injured in the performance of their service, is recognized to exist by implication. Toledo, etc., R. Co. v. Rodrigues, 47 Ill. 188, 95 Am. Dec. 484; Bedford Belt Ry. Co. v. McDonald, 17 Ind. App. 492, 46 N. E. 1022, 60 Am. St. Rep. 172.

In Cyclists' Touring Club v. Hopkinson, [1910] 1 Ch. Div. 179, the question was whether it was within the power of the corporation to pay an annuity to its former secretary during his life, and to set aside and specifically appropriate to that purpose such portion of the corporation's investments as might be required to produce the annuity. The court quoted from the opinion in Hutton v. West Cork Ry. Co., 23 Ch. Div. 654, 671, as follows: "Most businesses require liberal dealings. The test there again is not whether it is bona fide, but whether, as well as being bona fide, it is done within the ordinary scope of the company's business, and whether it is reasonably incidental to the carrying on of the company's business for the company's benefit." The court sustained the power of the corporation to set aside funds for the purpose of paying the annuity.

In Superior Pocahontas Coal Co. v. Commissioner of Internal Revenue, 7 B. T. A. 380, the question was whether a contribution of $1,000 made by the coal mining corporation towards the rebuilding of a church in a town of approximately 1,500 inhabitants

was deductible as a business expense. It appeared that 90 per cent. of the wage earners of the town were employed by the corporation, and that 75 to 90 per cent. of the congregation of the church to which the contribution was made were employees of the corporation. The Board held that the contribution was allowable as a business expense, saying: "That it [the contribution] had such a relation can not be doubted in view of the particular facts under which the contribution was made. In our opinion the contribution may well be considered as an ordinary and necessary business expense." Commenting on this and other cases, the Board in its opinion in the present case said: "In nearly all of these cases, the church or other building was erected in a mill village, the population of which was almost exclusively composed of employees of the corporation *and their dependents.* (Italics ours.) In the present case, the hospital was not erected in a village where nearly all of the inhabitants were employees or represented by employees of the corporation, but in a city of over 15,000 people. It also served a large manufacturing plant about two miles from Corning. It was erected at a cost of between $250,000 and $300,000, for the benefit of the whole city. While the fact that petitioner's employees were liable to suffer and did suffer numerous accidents, and while it was a benefit to the corporation that its employees could be hospitalized in their home city, and while no doubt the hospital conferred benefits upon the families of petitioner's employees, it is our opinion that the benefits were incidental, rather than direct."

We are unable to concur in this view. The population of Corning was about 15,000, of whom 2,167 were employees of appellant. These employees and their dependents must have constituted two-thirds of the population of the city. If the moral welfare of such a large number of employees and their dependents would have justified a contribution for the erection or support of a church, we think it equally plain that a contribution having for its direct object the physical well-being of employees and their dependents would likewise be justified. When we consider the volume of business transacted by this corporation, the number of its employees and their dependents, the contribution in question was not large. It is apparent from the findings of the Board that the facilities furnished the company's resident physician were inadequate, and that it was necessary either to build a hospital, which the Board finds "would have been very expensive," or to make this contribution to the Corning Hospital. Another consideration probably influenced the corporation in deciding to make this contribution rather than to enlarge its own hospital facilities; had it enlarged its own hospital facilities to such an extent as to be able to take care of its own employees, such an arrangement would not have benefited the dependents of those employees. Not only were appellant's employees benefited as a result of the contribution, but their dependents as well.

In our view, this contribution was "reasonably incidental to the carrying on of the company's business for the company's benefit," and therefore allowable as a deduction.

Affirmed in part; reversed in part; costs to be equally divided.