## AMERICAN LOAN CO. v. HANDY, Collector of Internal Revenue.

### No. 1.

District Court, D. Delaware.
Aug. 31, 1936.

Richards, Layton & Finger, of Wilmington, Del., and Jackson R. Collins, of New York City, for plaintiff.

Leonard E. Wales, U. S. Atty., of Wilmington, Del., and Robert H. Jackson, Gen. Counsel, Bureau of Internal Revenue, and William Boyd Duff, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

NIELDS, District Judge.

Indebitatus assumpsit under U.S.Rev. St. § 3226, as amended (26 U.S.C.A. §§ 1672–1673), to recover moneys wrongfully collected by the defendant from the plaintiff as corporate income taxes. In its declaration plaintiff alleges: "That the collection on March 12, 1930, of $2,427.75, the collection on November 15, 1930, of $7,610.10, and the collection on April 4, 1931, of $90.60, by the defendant from the plaintiff as and for an alleged corporate income tax, additional tax and interest thereon for the fiscal year ended January 31, 1930, * * * was illegal and invalid. That by reason of the facts aforesaid there * * is now due from the defendant to the said plaintiff the sum of $10,128.45, with interest."

Defendant pleads non assumpsit and statute of limitations. Defendant further moves for judgment "for the reasons that there is not sufficient or substantial evidence to warrant judgment for the plaintiff and that the defendant is entitled to such judgment as a matter of law under the evidence and facts of the case."

The following facts are stipulated by the parties: August 9, 1914, plaintiff was incorporated. May 8, 1929, plaintiff with Industrial Bankers of America, Inc., and Beneficial Industrial Loan Corporation, entered into an agreement entitled an "Agreement and Act of Consolidation" which was filed with the secretary of state of the state of Delaware on May 9, 1929. March 13, 1930, plaintiff filed an income tax return including therein income from February 1, 1929, to May 9, 1929, the effective date of said "Agreement and Act of Consolidation." At the time of filing said return plaintiff paid to defendant $2,427.75 and on November 17, 1930, paid $7,283.16 balance of the reported tax with interest amounting to $326.94. March 14, 1931, an additional corporate income tax of $85.52 with interest of $5.08 was assessed against plaintiff and was paid. July 12, 1930, an amended income tax return for the period in question was filed by plaintiff. This return showed that no corporate income tax was due for said period. In this return the following deductions were made:

"Expense of Stock Sale

| "Application and Registration Fee under Blue Sky Legislation | $ 3,975.09 |
| --- | --- |
| Salaries | 16,144.76 |
| Legal Fees | 6,247.72 |
| Traveling expense | 4,650.60 |
| Postage | 138.00 |
| Miscellaneous services | 337.92 |
| Prospects, stationery, etc. | 1,909.21 |
| Entertainment | 138.35 |
| Telephone and telegraph | 43.84 |
| Insurance | 44.27 |
| Help wanted advertisements for salesmen | 2,015.64 |
| Miscellaneous | 934.06 |
| | $36,579.46 |

"Commission on Stock Sales

| "Commissions paid in connection with the sale of stock | 359,375.25 |
| --- | --- |
| Total | 395,954.71" |

The $395,954.71 appeared upon the books of plaintiff as an asset and was amortized against the surplus account from year to year. May 8, 1929, the item appeared in the balance sheet as $310,752.03. October 1, 1931, plaintiff filed a refund claim with the Commissioner of Internal Revenue for $9,796.43, the then total amount of the original and deficiency assessments. September 8, 1932, the claim for refund was disallowed. The items covering expense of stock sale and commission on stock sales is shown by the balance sheet of the plaintiff together with certain expenditures of the Industrial Bankers of America, Inc., and of the Beneficial Industrial Loan Corporation. May 9, 1929, the amount was carried on the balance sheet of the Beneficial Industrial Loan Corporation under the caption of "good will."

In 1926 plaintiff entered into an expansion program which necessitated the raising of funds. This was done in the years 1927, 1928, and the early part of 1929. The expenses incurred in securing this additional capital make up the expenses hereinabove recited. Plaintiff admits that under the Revenue Act of 1928 here involved such items are not deductible as ordinary and necessary expenses. Plaintiff recognizes that they are of a capital nature and believes that under section 41 of the Revenue Act of 1928 (26 U.S.C.A. § 41 and note) and the accounting rules required thereunder; under section 23(a) (4) of that act, 26 U.S.C.A. § 23 and note; and under the principles enunciated in Hershey Mfg. Co. v. Commissioner (C.C.A., 10, 1930) 43 F.(2d) 298, the items are deductible.

The items are not ordinary and necessary expenses. The items cannot be deducted as losses. The expenditures are labeled in the company's return "expenses of stock sales" and "commissions on stock sales." Every item included was paid out in marketing the company's own capital stock. The expenditures resulted in the acquisition of no property other than the net amount received for the stock. The Board of Tax Appeals has recently decided the identical issue: "The only asset acquired was the money received for the stock. The money balances the stock and takes its place in the asset account. There is nothing left to balance the cost of acquiring the money. There is nothing to replace it. Commissions paid for marketing stock simply diminished the net return

of the stock issued and essentially they are equivalent to the issuance of stock at a discount. The corporation received that much less from the issuance of the stock. * * * In our opinion the loss claimed here does not come within the provisions of section 234(a) (4) of the Revenue Act of 1926. That subdivision applies only to losses of property or some kind of an asset, but in this case no asset or property was acquired and hence nothing which would form the subject of a loss within the meaning of the statute." James I. Van Keuren, 28 B.T.A. 480, 486. Section 23(f) of the Revenue Act of 1928 (26 U.S.C.A. § 23 and note) corresponds to section 234 (a) (4) of the Revenue Act of 1926 (44 Stat. 41, 42).

In the Van Keuren Case First Bond & Mortgage Company was dissolved, it liquidated its assets and ceased to do business. Yet the Board of Tax Appeals held that the expenditures which had been incurred in the sale of its stock might not be deducted as loss upon dissolution. The transaction evidenced by the "Agreement and Act of Consolidation" of May 8, 1929, was an exchange of stock and did not give rise to either gain or loss.

In a case involving attorney's fees paid by two corporations in connection with a sale of their assets and business to a third company it was contended that the fees might be deducted as losses upon the dissolution of the first companies. The fact of dissolution was outright and unquestioned. The Board of Tax Appeals held:

"Regardless of whether or not the amounts here in dispute may be classified as capital expenditures, we are of opinion that they were not ordinary and necessary expenses of carrying on a business.

"The petitioners contend, in the alternative, that the attorney's fees, if representing capital expenditures, are nevertheless deductible as losses, under the provisions of section 23(f) of the 1928 Act,' which losses were incurred upon their dissolution within the taxable year.

"There is no merit in this contention. There is nothing in the evidence to indicate, and it is not claimed by the petitioners, that there was any loss upon the transfer of the petitioners' assets to the Northam Warren Corporation. We assume, in the absence of evidence to the contrary, that the transaction was mutually beneficial to all of the parties concerned and that value was received by the petitioners on

account of the expenditures for the attorney's fees." Odorono Co., 26 B.T.A. 1355.

The Circuit Court of Appeals, First Circuit, held: "The petitioner's second contention (illustrated by its claim) that the payment of $150,000 as a commission for the sale of the first issue of $2,000,000 of preferred stock is 'something in the nature of an intangible asset in some way or other associated with the dollars it was expended to secure' seems to us an untenable, far-fetched notion—inconsistent with the plain meaning of the tax statutes. * * * Commissions paid for marketing stock simply diminish the net return from the stock issue. Financially, they are equivalent to an issue of stock at a discount from par; the par value must be carried as a liability without an off-setting, equal, amount of cash or property." Simmons Co. v. Commissioner, 33 F.(2d) 75, 76. Certiorari denied 280 U.S. 588, 50 S.Ct. 37, 74 L.Ed. 637.

The Court of Appeals of the District of Columbia held: "In the instant case, appellant sold to Estabrook & Co. preferred stock of the par value of $3,000,000 at a discount of $8 per share; so that appellant received, not $3,000,000, but $2,760,-000; in other words, $92 per share. The effect of this transaction was to reduce by the amount of $240,000 the capital available to the appellant. In other words, it represents a capital expenditure, and should be charged against the proceeds of the stock, and not be recouped out of operating earnings." Corning Glass Works v. Lucas, 59 App.D.C. 168, 37 F.(2d) 798, 799, 68 A.L.R. 736.

There is no authority to the effect that expenses of the type in question are deductible on dissolution. There is one case holding that organization expenses may be deducted upon dissolution. Malta Temple Association, 16 B.T.A. 408, 409. In the Van Keuren Case the Board of Tax Appeals said: "If the expenditures were in fact organization expenses they were of the nature and character of capital expenditures which we have held to be deductible under the loss provisions of the statute in the year in which the corporation surrendered its charter and was dissolved. Malta Temple Ass'n, 16 B.T.A. [408], 409. The expenditures in this case, however, were in connection with a stock sales campaign. None of them can be identified as having been incurred in connection with the acquisition of the corporate franchise."

In the same opinion the Board also states: "The petitioner relies upon our decision in the case of Malta Temple Ass'n, 16 B.T.A. [408], 409. That case, however, related to a loss sustained by a corporation upon dissolution and surrender of its charter, not in connection with expenditures incurred in selling stock, but expenditures in connection with incorporation. The petitioner here is not claiming a loss for what it cost to incorporate, but what it cost to acquire capital, a different matter. It may fairly be said that money expended to form a corporation results in the acquisition of an asset, namely, the corporate franchise, which may be considered as a balancing asset, but money paid out to acquire capital does not result in the acquisition of any asset other than the capital itself. There is thus a clear distinction between the Malta Temple Case and the case at bar."

The other case upon which plaintiff relies is Hershey Mfg. Co. v. Commissioner (C.C.A.) 43 F.(2d) 298. The Hershey Case and the Malta Temple Case involve the question of organization expenses. In Surety Finance Company of Tacoma, 27 B.T.A. 616, the Board of Tax Appeals refers to the Hershey Manufacturing Case:

"The argument in behalf of the petitioner assumes that the decision of the court in Hershey Mfg. Co. v. Commissioner [C.C.A.] 43 F.(2d) 298 (which reversed this Board on the disallowance by it of a deduction for exhaustion in the matter of organization expense), is correct and will be followed by us and that as there is no logical basis for treating differently the two items above set out, aggregating an organization expense of $36,646.73, both items or the full, amount should be amortized over the life of the charter and recovered by pro rata exhaustion deductions over the 50-year period of petitioner's corporate life.

"In Simmons Co., 8 B.T.A. 631, we held that the Revenue Act of 1918 does not authorize any deduction of the amounts paid by a corporation as commissions for the sale of its capital stock. In so holding, the Board adhered to its previous rulings in the appeal of Charles H. Lilly Co., 2 B.T.A. 1058, and Emerson Electric Mfg. Co., 3 B.T.A. 932. See, also, Corning Glass Works, 9 B.T.A. 771, affirmed in part and reversed in part in [59 App.D.C. 168], 37 F.(2d) 798 [68 A.L.R. 736], certiorari denied, 281 U.S. 742 [50 S.Ct. 348, 74 L.Ed.

1155]; Harrisburg Hospital, Inc., 15 B.T.A. 1014.

"The Simmons Co. Case, supra, was appealed and the decision of the Board therein affirmed, 33 F.(2d) 75, and certiorari denied, 280 U.S. 588 [50 S.Ct. 37, 74 L. Ed. 637].

"We have carefully considered the opinion in the Hershey Mfg. Co. Case, supra, and have the highest regard for the able court rendering the same, but, in view of the decisions and the reasons assigned therefor in the other cases cited herein, we are of the opinion that the principles applied therein are also applicable in the instant case and that the organization expenses, including the cost of sale of stock, are not, within the meaning of the Revenue law, either 'ordinary and necessary expenses incurred in carrying on the business' of the petitioner nor a capital investment and we, therefore, hold that in computing petitioner's taxable net income for either of the years 1926 or 1927 it is not entitled to deduct from gross income aforesaid expenses nor amortize same."

The expenditures in the present case are not of the type held deductible under any circumstances upon dissolution. It is therefore unnecessary to examine the question as to whether a dissolution occurred as the result of the Agreement and Act of Consolidation of May 8, 1929. In fact, plaintiff was taken over as a living organization. All its rights, privileges, powers, and franchises, all its restrictions, disabilities, and duties, as well as its property vested in the consolidated company. There was nothing lost. There is no reason why a loss should be imagined for the purpose of escaping taxation. The treatment of these expenditures by the company itself is very enlightening. The balance of the expenditures appearing on the balance sheet of the plaintiff was taken over upon the books and balance sheet of the consolidated company under the caption "good will." On the other side of the balance sheet of the consolidated company appears its new stock. When the company thus treats the expenditure as representing a continuing value and benefit to its business, it is inconsistent to claim that expenditure as a loss for income tax purposes.

Judgment will be entered for defendant.

Exceptions, if any, may be filed within ten days from the date hereof.