## B. S. Green Co. v. Charles H. Blodgett, use, etc.

1. CORPORATIONS—*Contracts to Advertise, Not Ultra Vires.*—Effort to attract public attention, and thus secure additional trade, has become a legitimate part of the business of tradesmen and corporations, in nearly all lines of trade and business. A contract made by the general manager of a business corporation with a public newspaper to advertise the business of the firm, or with a signwriter to paint or post signs in conspicuous places, to bring its business prominently before the public, would be regarded as properly within the scope of his authority and power as an agent of the company.

2. SAME—*Inducements to Locate a Post Office Not Ultra Vires.*—A contract of subscription made by a corporation to pay a sum named as an inducement to the selection of a site for a post office adjoining its place of business, where such selection and location will be of direct financial and business advantage and benefit to it, is within the scope of its authority and will be binding in law.

3. SAME—*Use of Seal Not Indispensable.*—The doctrine of the common law, that a corporation spoke alone by its seal, is practically obsolete. A seal is now only necessary in cases where one is required of an individual acting in his individual capacity.

**Memorandum.**—Assumpsit. In the Circuit Court of McLean County; the Hon. THOMAS F. TIPTON, Judge, presiding. Declaration on a contract of subscription. The pleas are stated in the opinion of the court; jury waived and trial by the court; finding and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1894, and affirmed. Opinion filed October 29, 1894.

### Statement of the Case.

Blodgett, the nominal plaintiff below, was the owner of certain lots in the city of Bloomington, which he and other persons and corporations, owners of property doing business in the vicinity, wished to have accepted by the United States as a site for a post office building. As an inducement to such selection, the interested parties wished the Blodgett lots to be offered to the government for $8,000, though they were of greater value. In order to reimburse Blodgett for the loss so to be imposed upon him by such an offer, it was arranged to raise a fund by subscription to be paid to him. This resulted in the delivery to Blodgett of an instrument in writing as follows:

Bloomington, Ills., March 14, 1891.

We, the undersigned, agree to pay Charles H. Blodgett, or order, the sum set opposite our respective names, within thirty days after lots nine (9), sixteen (16), seventeen (17), eighteen (18), and nineteen (19), Proprietors' subdivision of lots one (1) to six (6) original town (now city) of Bloomington, McLean county, Illinois, are definitely accepted as a site for the post office building.

If not paid when due, the sums subscribed bear eight (8) per cent per annum interest from the time when due.

B. S. Green Co., one thousand dollars ($1,000) without interest.

Dr. H. Schroeder, five hundred dollars.

H. S. Swayne, Agt., fifteen hundred dollars.

S. Livingston, five hundred dollars.

Wolf Grieshiem, five hundred dollars.

Blodgett tendered the lots to the government for $8,000, on the faith of the promises set out in the instrument, and also in conjunction with the beneficial plaintiff, incurred outlays of money by way of defraying expenses of persons who went to Washington to secure the location of the post office on the lots. The government definitely accepted the lots at price named as a site for its postoffice. This was an action in assumpsit against the B. S. Green Co., to recover upon the subscription list above set out. The defendant company filed three pleas: (1) General issue. (2) *Non est factum* veri-

fied. (3) That there was no consideration for the execution of the instrument. Issue was joined upon the 1st and 2d of the pleas, and to the 3d, the plaintiff replied that large sums of money had been expended in accomplishing the purpose of the subscription and upon the faith thereof. The cause was submitted to the court without a jury, and judgment rendered for the plaintiff, and the defendant company prosecuted this appeal.

Appellant's Brief, Kerrick, Lucas & Spencer, Attorneys.

A voluntary subscription to promote a common object is open to the defense of a want of consideration, unless money has been expended or liability incurred, which would cause a loss to the person expending the money or incurring the liability. Pratt v. Trustees, 93 Ill. 478.

The second plea cast upon the plaintiff the burden of proving that the instrument was executed by the defendant. Walton v. Trustees, etc., 12 Ill. 63; Melvin v. Hodges, 71 Ill. 422; C. E. L. R. Co. v. Hutchinson, 25 Ill. App. 476.

The courts of Illinois have probably gone further than the courts of any other State in upholding contracts made by the officers of corporations. Yet the extreme limit in such cases is when it is shown that the act pertained to the ordinary business of the corporation, and the contract was executed by the president and the seal of the corporation attached. Smith v. Smith, 62 Ill. 496; Phillips v. Coffee, 17 Ill. 154; Smith v. Smith, 62 Ill. 493; Sawyer v. Cox, 63 Ill. 130; Wood et al. v. Whelen, 93 Ill. 162; Sawyer v. Cox, 63 Ill. 130; Life Ins. Co. v. White, 106 Ill. 67; McDonald v. Chisholm, 131 Ill. 273; Mullanphy et al. v. Schott, 135 Ill. 655; Joliet E. L. & P. Co. v. Ingalls, 23 Ill. App. 45; Adams v. Cross Wood P. Co., 27 Ill. App. 315; Chishold v. McDonald, 30 Ill. App. 177; Koch v. National B. Asso., 35 Ill. App. 467.

We may concede that under the rule as to presumptions in this State, had the seal of the corporation been attached, and had it been shown that the making of such contracts was within the scope of the ordinary business of the corporation, the presumption of the authority in the president to

B. S. Green Co. v. Blodgett.

make such a contract might be indulged in.   But in this case the seal was not attached, nor was there any attempt made to show that making donations was within the ordinary business of the corporation.   And therefore it may well be said that "such matters form no part of the ordinary business of the company which the president, as its executive officer, is authorized to transact *virtute officii.*"

The rule as to the presumptions as to the power of the president of the corporation merely as such, is still more limited, in most, if not all the other States.   Chicago Railroad Co. v. James, 22 Wis. 198; Titus v. Cairo R. R. Co., 37 N. Y. Law 98; Twelfth Street Market Co. v. Jackson, 102 Pa. St. 273; Asher v. Sutton, 31 Kan. 286; First Nat. Bank v. Hock, 89 Pa. St. 324; Templin v. Chicago R. R., 35 N. W. Rep. 634; Griffin v. Chicago R. R. Co., 36 N. W. Rep. 901; Walworth v. Farmers' Trust Co., 14 Wis. 325; Leese v. Isthmus R. Co., 6 Oreg. 125; Wheat v. Bank of Lewisville, 5 S. W. Rep. 305; Murray v. Nelson, 9 N. E. Rep. 634; Pittsburg v. Reese, 12 Atl. Rep. 362; Stanley v. Sheffield Co., 4 R. S. 34; McClellan v. Detroit Works, 56 Mich. 579; Smith v. Lawsen, 18 W. Va. 212; Western R. R. Co. v. Bayne, 11 Hun (N. Y.) 166; Western R. R. Co. v. Bayne, 75 N. Y. 1; Workhouse v. Moore, 95 Pa. St. 408; People's Bank v. St. Anthony, etc., 39 Hun (N. Y.) 498; Fulton Bank v. N. Y., etc., C. C., 4 Paige (N. Y.) 127; Reiley v. Ind. R. R. Co., 1 Hun (N. Y.) 202; Mt. Sterling Co. v. Looney, 1 Metc. (Ky.) 550; Murray v. Nelson, 9 N. E. Rep. 634; Pittsburg E. Co. v. Stewart, 41 Pa. St. 54; Cook on Stockholders, Sec. 716; Blue v. Bear, 20 Cal. 602; Farmers' Bank v. McKee, 2 Pa. St. 318; Bacon v. Miss. Ins. Co., 31 Miss. 116; Spyker v. Shin, 8 Ala. (N. S.) 333; Dispatch Line v. Bellamy, 12 N. H. 333; Stowe v. Wyne, 7 Conn. 214; Whitwell v. Warm, 20 Vt. 425; Wait v. Nashua, 23 Atl. Rep. 77.

"The corporate funds can not be given away gratuitously. The property and funds of a corporation belong to its shareholders, and can not be devoted to any use which is not in accordance with the chartered purpose, except by unanimous consent.   No agent of the corporation has implied authority to give away any portion of the corporate

property or to create a corporate obligation gratuitously."
Morawetz on Corporations, Sec. 423; Lawson, Rights, Remedies and Practice, Vol. 1, Par. 403.

APPELLEE'S BRIEF, JOHN E. POLLOCK AND POLLOCK &
CONDON, ATTORNEYS.

When any agent appointed by a corporation professes to act on its behalf, the only safe method of arriving at the truth is to presume that he has acted upon due authority until the contrary is shown. As a general rule, corporations act through their presidents; and an act done through the president will be presumed to be authorized unless shown to be otherwise. Morawetz on Corp., Sec. 538; Glover v. Lee, 140 Ill. 107; Smith v. Smith, 62 Ill. 493; Mitchell v. Deeds, 49 Ill. 424; Kraft v. Freeman, 87 N. Y. 628.

When a contract is made by any agent of a corporation in its behalf, and for a purpose authorized by its charter, and the corporation receives the benefit of the contract without objection, it may be presumed to have authorized or ratified the contract of its agent. Bank of Columbia v. Patterson, 7 Cranch (U. S.) 299; Bank of U. S. v. Dandridge, 12 Wheat. (U. S.) 64; Zabriskie v. Cleveland, etc., R. R. Co., 23 How. (U. S.) 381; Gold Mining Co. v. Nat. Bank, 96 U. S. 640; Pneumatic Gas Co. v. Berry, 113 U. S. 322, 327.

The true rule in regard to seals, is that "the corporate seal need not be attached to a corporate contract unless a similar contract, when made by an individual, would require a seal, although formerly it was supposed that a corporation could not enter into a contract except by attaching the corporate seal to a written statement of that contract." Cook on Stock and Stockholders, Sec. 721, p. 1094; Linkauf v. Calman, 110 N. Y. 50; Muscatine Water Works v. Muscatine Lumber Co., 52 N. W. Rep. 108.

MR. JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.
The case was before us at a prior term upon appeal by the present appellant. We then reversed a former judgment against the company. (49 Ill. App. 180.) The evidence upon the former hearing as to the expenditures of

money upon the faith of the subscription and in further-ance of its purpose was the same as in the present record and is not contradicted. We held then that it sufficiently established a consideration for the undertaking and are still of the same opinion. The evidence on the former hearing was too meager to enable us to determine whether the promise was *ultra vires*. The record now discloses the business the company was engaged in transacting, and the location of its place of business with reference to the proposed site of the post office.

And it further appears that the appellant is a corporation chartered under the general laws of the State for the pur-pose of, and when the subscription was made was engaged in, manufacturing and dealing in saddlery, hardware, leather, shoe findings and vehicles. That its capital stock was $100,000, and that its place of business adjoined the post-office site on the Blodgett lots. Upon the authority of the rule announced, and adopting the reasoning of our Supreme Court in Richelieu Hotel Co. v. Mil. Encampment Co., 140 Ill. page 263, we are inclined to hold it within the cor-porate power of the appellant company to devote its funds to the purpose designed to be accomplished by the subscrip-tion in question. When the case was considered by us on the former hearing the only evidence bearing upon the issue of fact made under the plea of *non est factum* was that B. S. Green, president of the company, signed the name of B. S. Green Co. to the instrument sued upon and that the company was one organized for pecuniary profit. We then held, through Mr. Justice Pleasants, that the proof was not sufficient to bind the company to the performance of the undertaking in question. The record before us contains much additional proof pertinent to this point. It appears now that the B. S. Green Co. has a capital stock of $100,000 divided in shares of $100 each, of which B. S. Green owns 897 shares, Marshall J. Green 100 shares and B. D. Lucas three shares. And further that B. S. Green, who attached the corporate name to the instrument in suit, was not only the owner of practically nine-tenths of its capital stock, but was

its president, treasurer, and general manager of its business.
That his brother, who owned substantially the remainder
of the stock, was a clerk in charge of one of the departments
of the company's business and secretary of the company.
That the remainder of the stock, three one-thousandths part
thereof, was owned by an attorney of the company, and
that the board of directors was composed of these three
stockholders, and held meetings annually only.   The com-
pany was engaged in manufacturing and selling saddlery,
hardware, leather, shoe findings and vehicles, and had its
place of business adjoining the site obtained for the post
office.   These facts have an important bearing upon the
question whether the act of the president and general man-
ager in signing the subscription paper was effectual to bind
the company.   Corporations are bound by the acts of their
agents if within the scope of their authority.   The location
of the post office adjoining the place of business of the
company would be of direct financial and business advan-
tage and benefit to it.   Many persons, indeed, the people
generally residing in the city and the vicinity, would thereby
be caused to pass and repass the company's place of busi-
ness frequently, and would naturally have their attention
attracted to the articles it kept for sale, and to the fact that
it was an applicant for the patronage of all who desired or
might have need of the goods it made and sold.   The effect
would be to bring its business and line of trade prominently
before the public, to increase the number of its customers
and the amount of its sales, and consequently to add to its
gains and profits.   It would serve as an advertisement of its
business and add to the volume of its trade, as would adver-
tisements in the public newspapers or by way of handbills
distributed among the people through the post office, or
by signs painted upon fences or otherwise displayed in
public places.   It is believed that efforts to attract public
attention and thus secure additional trade has become a
legitimate part of the business of tradesmen and corpora-
tions in nearly all lines of trade and business.   Large sums
of money are devoted to this purpose annually by firms
and managers of corporations.   Such outlays are now

regarded as part of the legitimate expenses of a firm or corporation engaged in selling wares to the public as fully as the cost of advertising in the newspapers, of rent; insurance, clerk hire, taxes, etc. A contract made by the general manager of a business corporation of the character and capital of the appellant company with a public newspaper to advertise the business of the firm, or with a signwriter to paint or post signs in conspicuous places on the lines of highways or railroads, or in other ways to bring its business prominently before the public, would properly be regarded as within the scope of his authority and power as an agent of the company. Much greater sums than that agreed to be paid by the subscription in the case in hand are often appropriated by judicious business managers to the matter of advertising. It seems to us that the promise sued upon was clearly a reasonable exercise of the power possessed by the president, treasurer, and general manager of the appellant company, and that the corporation he represented ought to be held liable for his contract, which was so well calculated to secure to it additional customers, more extended trade and greater gains and profits.

We do not think it indispensable that the corporate seal should be attached to the writing. The doctrine of the common law that a corporation spoke alone by its seal is practically obsolete. It has been superseded by the modern and more reasonable rule that its seal is only necessary when a seal would be required if an individual was acting instead of a corporation. 4 Amer. and Eng. Ency. of Law, 242. New Athens v. Thomas, 82 Ill. 259. The judgment is clearly right upon the merits and we think no principle of law demands its reversal. It will be affirmed.