## The B. S. Green Company

*v.*

## Charles H. Blodgett, for use, etc.

*Filed at Springfield November 25, 1895.*

1. Appeals and errors—*waiver of right to question ruling upon demurrer to replication.* The right to question the overruling of a demurrer to a replication will be deemed waived, on appeal, where the record recites that the court, having heard the demurrer, considers it overruled, and by agreement of the parties "the issues being joined are submitted to the court for trial," etc., and where evidence was adduced under such replication as if an issue of fact had been joined.

2. Corporation—*seal not essential to validity of contract of subscription.* The corporate seal is not essential to the validity of a contract of subscription which is within the powers of the corporation by which it is made.

3. Same—*contract of subscription to secure location of post-office not ultra vires.* A corporation organized to manufacture and deal in merchandise may make a subscription for the purpose of securing the location of a post-office adjoining a building owned by it, where its effect will be to bring its business prominently before the public and increase its customers and sales.

*B. S. Green Co.* v. *Blodgett,* 55 Ill. App. 556, affirmed.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. Thomas F. Tipton, Judge, presiding.

Kerrick & Spencer, for appellant:

The courts of Illinois have probably gone further than the courts of any other State in upholding contracts made by the officers of corporations, yet the extreme limit, in such cases, is, when it is shown that the act pertained to the ordinary business of the corporation, and the contract was executed by the president and the seal of the corporation attached. *Smith* v. *Smith,* 62 Ill. 496.

That rule has been many times so stated and approved by the Supreme and Appellate Courts of this State. *Phil-*

*lips* v. *Coffee*, 17 Ill. 154 ; *Smith* v. *Smith*, 62 id. 493 ; *Sawyer* v. *Cox*, 63 id. 130 ; *Wood* v. *Whelan*, 93 id. 162 ; *Insurance Co.* v. *White*, 106 id. 67 ; *McDonald* v. *Chisholm*, 131 id. 273; *Mullanphy* v. *Schott*, 135 id. 655 ; *Electric Light Co.* v. *Ingalls*, 23 Ill. App. 45; *Adams* v. *Printing Co.* 27 id. 315; *Chisholm* v. *McDonald*, 30 id. 177; *Koch* v. *Building Ass.* 35 id. 467.

The rule as to the presumptions as to the power of the president of the corporation, merely as such, are still more limited in most, if not all, the other States.    *Railroad Co.* v. *James*, 22 Wis. 198; *Market Co.* v. *Jackson*, 102 Pa. St. 273; *Titus* v. *Railroad Co.* 37 N. Y. Law, 98; *Asher* v. *Sutton*, 31 Kan. 286; *Bank* v. *Hock*, 89 Pa. St. 324; *Walworth* v. *Trust Co.* 14 Wis. 325 ; *Leese* v. *Railroad Co.* 6 Ore. 125 ; *Stanley* v. *Sheffield Co.* 4 R. S. 34; *McClellan* v. *Detroit Works*, 56 Mich. 579 ; *Smith* v. *Lawsen*, 18 W. Va. 212 ; *Railroad Co.* v. *Bayne*, 11 Hun, 166, and 75 N. Y. 1 ; *Workhouse* v. *Moore*, 95 Pa. St. 408 ; *Bank* v. *St. Anthony*, 39 Hun, 498 ; *Bank* v. *New York, etc.* 4 Paige, 127 ; *Reiley* v. *Railroad Co.* 1 Hun, 202 ; *Mt. Sterling Co.* v. *Looney*, 1 Metc. (Ky.) 550 ; *Pittsburg E. Co.* v. *Stewart*, 41 Pa. St. 54; Cook on Stockholders, sec. 716; *Blue* v. *Bear*, 20 Cal. 602; *Bank* v. *McKee*, 2 Pa. St. 318; *Bacon* v. *Insurance Co.* 31 Miss. 116 ; *Spyker* v. *Shin*, 8 Ala. (N. S.) 333 ; *Dispatch Line* v. *Bellamy*, 12 N. H. 333; *Stowe* v. *Wyne*, 7 Conn. 214; *Whitwell* v. *Warm*, 20 Vt. 425.

No agent of a corporation has implied authority to give away any portion of the corporate property, or to create a corporate obligation gratuitously.    Morawetz on Corp. sec. 423; 1 Lawson on Rights, Rem. and Pr. par. 403.

No inflexible rule of law can be laid down by which it can be determined, in all cases, whether or not the contract of a corporation is *ultra vires*, and whether or not the corporation is estopped to assert that a contract is *ultra vires*.    Each case must be determined largely from its own circumstances.    Green's Brice's Ultra Vires, (2d Am. ed.) 64; 1 Morawetz on Private Corp. (2d ed.) sec. 362.

John E. Pollock, and Pollock & Condon, for appellee :

The subject of the subscription was a matter intimately connected with the legitimate business of the company, and the transaction was one small enough, in comparison with the capital of the company and the business done by it, to be with propriety considered within the scope of Green's authority, as owner of nine-tenths of the stock, and president, treasurer and general manager of a company whose directors only met once a year, and when they did, were composed of himself, his clerk and his attorney.    *Canning Co.* v. *Fitzgerald,* 137 U. S. 98 ; *Insurance Co.* v. *Insurance Co.* 19 How. 318; *Mining Co.* v. *Bank,* 104 U. S. 192 ; Taylor on Corp. secs. 202, 236, 241; Angell & Ames on Corp. 229, 302 ; Cook on Stockholders, sec. 716, p. 1079.

If this contract were *ultra vires* the company would be estopped now to set it up, having enjoyed the benefits. (*Brewing Co.* v. *Flannery,* 137 Ill. 318.)    But it was not *ultra vires.    Hotel Co.* v. *Military Encampment Co.* 140 Ill. 263.

The plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong.    *Bank* v. *Elevator Co.* 90 Mich. 550 ; *Holmes* v. *Metal Co.* 127 N. Y. 252 ; *Kadish* v. *Building Ass.* 151 Ill. 531.

In *Glover* v. *Lee,* 140 Ill. 107, the following language is used:    "As a general rule, corporations act through their presidents, and an act done through the president will be presumed to be authorized, unless shown to be otherwise."    See, also, Morawetz on Corp. sec. 538 ; *Mitchell* v. *Deeds,* 49 Ill. 424; *Smith* v. *Smith,* 62 id. 493 ; *Kraft* v. *Freeman,* 87 N. Y. 628.

When a contract is made by any agent of a corporation in its behalf and for a purpose authorized by its charter, and the corporation receives the benefit of the contract without objection, it may be presumed to have

authorized or ratified the contract of its agent. *Bank* v. *Patterson*, 7 Cranch, 299; *Bank* v. *Dandridge*, 12 Wheat. 64; *Zabriskie* v. *Railroad Co.* 23 How. 381; *Gas Co.* v. *Berry*, 113 U. S. 322; *Gold Mining Co.* v. *Bank*, 96 id. 640.

It is the law, as laid down in *Houston* v. *Buer*, 117 Ill. 326, that, where the act of an agent is for the benefit of the principal, ratification may be presumed.

Mr. Justice Carter delivered the opinion of the court:

This was an action in assumpsit upon a writing in these words:

"Bloomington, Ill., *March 14, 1891.*

"We, the undersigned, agree to pay to Charles H. Blodgett or order the sum set opposite our respective names, within thirty days after lots nine (9), sixteen (16), seventeen (17), eighteen (18) and nineteen (19), proprietor's subdivision of lots one (1) to six (6), original town (now city) of Bloomington, in McLean county, Illinois, are definitely accepted as a site for the post-office building,—if not paid when due, the sums subscribed to bear eight per cent per annum from the time when due: B. S. Green Company, one thousand dollars ($1000), without interest; H. S. Swayne, Agt., $1500; Dr. H. Schroeder, $500; S. Livingston, $500; Wolf Griesheim, $500."

The defendant company filed three pleas to the declaration: First, the general issue; second, *non est factum*, verified; third, no consideration. The plaintiff replied to the third plea that "the said contract in the plaintiff's declaration mentioned was a mutual subscription, signed by the various parties thereto for a common object, to-wit, the location of the government post-office building on the north-west corner of Jefferson and East streets, in the city of Bloomington. And plaintiff avers that there has been, since the making of the subscription, a large expenditure of money for the purpose of accomplishing the object for which said subscription was made, to-wit, the location of the government building as aforesaid."

Defendant demurred to this replication, and the court overruled the demurrer. By agreement of the parties the case was tried by the court without a jury. Judgment was entered for plaintiff for $1011.66, and an appeal was prosecuted to the Appellate Court for the Third District, where a judgment was entered reversing the judgment of the trial court and remanding the cause. (45 Ill. App. 180.) The case was re-docketed and again tried before the same judge without a jury, further evidence being introduced, and resulted in a judgment in favor of plaintiff for $1081.20, and defendant appealed to the Appellate Court, where the judgment was affirmed. (55 Ill. App. 556.) From said judgment of affirmance this appeal is taken.

All questions of fact must, on this appeal, be taken as having been conclusively found against appellant, and hence it must be taken as proved that it authorized its president, B. S. Green, to execute the written instrument sued on or ratified the act after the instrument was executed. There are therefore but three questions for us to consider: First, the ruling of the trial court in overruling the demurrer to the replication to the third plea; second, whether or not the instrument sued on failed to bind the corporation for the reason that the corporate seal was not attached; and third, whether or not it failed to bind the corporation for the reason that it was an act *ultra vires.*

As to the first question, it is sufficient to say that it must be presumed, from the record, that the appellant waived its right to question the ruling of the court in overruling its demurrer. The recital in the record is: "And the court having heard said demurrer, and being fully advised in the premises, doth consider the same overruled, and by agreement of the parties hereto, by their attorneys, the issues being joined are submitted to the court for trial without the intervention of a jury." Evidence was then adduced under the replication as if issue of fact had been joined. The record is silent as to

whether the appellant elected to abide its demurrer or to answer over, but we think the fair inference is that the parties treated the replication as having been traversed. Having treated the issue as one of fact, the error of the trial court, if any there was, in its ruling on the issue of law made by the demurrer, has been waived. *Strohm* v. *Hayes,* 70 Ill. 41, and cases there cited; *Lincoln* v. *Cook,* 2 Scam. 61; *Gardner* v. *Haynie,* 42 Ill. 291; *Camp* v. *Small,* 44 id. 37.

We are also of the opinion that if the corporation had the power to make the instrument in question it was not essential to its validity to have the corporate seal attached. It is no longer the law that a corporation is bound by its contracts only when made under its corporate seal. The rule now is, that a corporation may bind itself, in a matter within its charter powers, by a writing not under seal to the same extent as an individual may. Morawetz on Corp. sec. 338, p. 320; Cook on Stockholders, sec. 721, p. 1094; *Muscatine Water Co.* v. *Muscatine Lumber Co.* 85 Iowa, 112; *Gottfried* v. *Miller,* 104 U. S. 521; 4 Am. & Eng. Ency. of Law, 242, and cases cited; *Town of New Athens* v. *Thomas,* 82 Ill. 259; *Racine and Mississippi Railroad Co.* v. *Farmers' Loan and Trust Co.* 49 id. 331; *Board of Education* v. *Greenebaum,* 39 id. 609.

We are also inclined to hold that in making the subscription and executing the instrument sued on appellant did not exceed its corporate powers. It was a corporation organized under the general laws of the State, for the purpose of, and was engaged in, manufacturing and dealing in saddlery, hardware, leather, shoe findings and vehicles. Its place of business was in a building which it owned adjoining the post-office site on the Blodgett lots. Its capital stock was $100,000, of which said B. S. Green, who was its president, treasurer and general manager, owned $89,700, his brother, Marshall J. Green, a clerk and secretary of the company, $10,000, and the attorney of the company $300. The board of directors consisted

of these three persons, and held meetings annually, only. We think the case is within the reasoning employed by this court in enforcing a similar subscription in *Richelieu Hotel Co.* v. *Military Encampment Co.* 140 Ill. 248, and we are disposed to agree with what was said on this question by Mr. Justice Boggs in the decision of the case at bar in the Appellate Court, as follows:

"The location of the post-office adjoining the place of business of the company would be of direct financial and business advantage and benefit to it. Many persons,— indeed, the people generally,—residing in the city and the vicinity would thereby be caused to pass and repass the company's place of business frequently, and would naturally have their attention attracted to the articles it kept for sale, and to the fact that it was an applicant for the patronage of all who desired or might have need of the goods it made and sold. The effect would be to bring its business and the line of trade prominently before the public, to increase the number of its customers and the amount of its sales, and consequently to add to its gains and profits. It would serve as an advertisement of its business and add to the volume of its trade, as would advertisements in the public newspaper, or by way of handbills distributed among the people through the post-office, or by signs painted on the fences or otherwise displayed in public places. It is believed that efforts to attract public attention, and thus secure additional trade, have become a legitimate part of the business of tradesmen and corporations in nearly all lines of trade and business. Large sums of money are devoted to this purpose annually by firms and managers of corporations. Such outlays are now regarded as part of the legitimate expenses of a firm or corporation engaged in selling wares to the public, as fully as the cost of advertising in the newspapers, of rent, insurance, clerk hire, taxes, etc. A contract made by the general manager of a business corporation of the character and capital of the appellant

company, with a public newspaper to advertise the business of the firm, or with a sign-writer to paint or post signs in conspicuous places along the lines of highways or railroads, or in other ways to bring its business prominently before the public, would properly be regarded as within the scope of his authority and power as an agent of the company. Much greater sums than that agreed to be paid by the subscription in the case in hand are often appropriated by judicious business managers to the matter of advertising. It seems to us that the promise sued upon was clearly a reasonable exercise of the power possessed by the president, treasurer and general manager of the appellant company, and that the corporation he represented ought to be held liable for his contract, which was so well calculated to secure to it additional customers, more extended trade, and greater gains and profits." See, also, *Kadish* v. *Garden City Loan and Building Ass.* 151 Ill. 531, and cases cited.

Finding no error in the record, the judgment of the Appellate Court will be affirmed. *Judgment affirmed.*