MONROE SEIBERLING

*v.*

JOSEPH MILLER *et al.*

*Opinion filed February 17, 1904.*

1. FIXTURES—*vendee cannot remove fixtures attached under a contract of purchase.* Articles annexed or structures erected by a vendee of land who is in possession under a contract of purchase but who has not obtained title cannot be removed by him without the consent of the vendor, who is not in default under the contract, since it is presumed the vendee intended the articles or structures to be fixtures in view of his expectation to acquire title.

2. SAME—*when vendee cannot claim machinery as personal property.* One who enters into a contract for the purchase of land and takes possession thereof, using the building thereon for manufacturing purposes, cannot claim the machinery and appliances in the building as personal property, upon the ground that the same had been attached by a former tenant of the vendor with the intention they should not be fixtures.

3. EVIDENCE—*when contract of corporation is admissible.* A contract of purchase by a corporation is admissible in evidence although the word "Manufacturing," used in the name of the corporation, is written "Mfg." in the contract, and although the contract is not under the seal of the corporation.

4. CONTRACTS—*when a forfeiture of contract is unnecessary.* When a vendee in possession under a contract to purchase real estate defaults in payment and surrenders possession to the vendor, the question whether the latter declared a forfeiture of the contract is not material in determining whether the machinery and appliances in the building on the land were fixtures or personal property.

5. PROPOSITIONS OF LAW—*when propositions of law are properly refused.* The refusal of propositions of law is proper where they are not applicable to the facts of the case or where they present mixed questions of law and fact.

*Seiberling* v. *Miller*, 106 Ill. App. 190, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. L. D. PUTERBAUGH, Judge, presiding.

In 1889 Rouse, Hazard & Co., a corporation, engaged in the business of manufacturing bicycles in the city of Peoria. On August 3, 1895, S. B. Hazard and Harry G. Rouse owned the entire stock of the corporation. On that date these men entered into a contract with Theodore J. Miller, by which Miller agreed to erect a factory building upon ten acres of a tract of land the title to which he seems to have acquired in fee ten days after making this contract, and to give to them, on or before November 1, 1896, a clear title to the ten acres, in consideration of which Hazard and Rouse agreed to occupy the factory as soon as completed, to proceed forthwith to manufacture ten thousand or more bicycles for the market of 1896, and to operate the factory for a term of five years from November 1, 1895. The object Miller had in making this agreement seems to have been to increase the value of the surrounding property, to sell enough of it to pay for the erection of the factory building and the original cost of the entire tract, and to have some property remaining out of which to make a profit on the transaction. It appears that Joseph Miller and Frank Miller, appellees, erected this building in question and had the same completed in the fall of 1895. Rouse, Hazard & Co. furnished and installed in the building, engines, pumps, boilers, shafting, heating apparatus, water system and electric light system, including dynamo, and machinery and tools, at a cost of over $60,000, in pursuance of the contract above referred to, for the purpose of manufacturing bicycles, and moved into the building in January or February of 1896. The evidence showed that it carried out its part of the above contract in every respect for a period of two and one-half years, when it became bankrupt.

It appears that Theodore J. Miller on January 2, 1896, conveyed the ten acres involved in this litigation, by trust deed, to Nicholas Ulrich in trust for Joseph Miller & Sons, a partnership, composed of Joseph Miller and Frank Miller, to secure the payment of certain notes, among them being notes signed by Rouse and Hazard and Theodore J. Miller.

On June 30, 1898, Theodore J. Miller conveyed the same property to O. J. Bailey, subject to the aforesaid trust deed, and recites that it includes the buildings and railroad facilities but does not include the machinery in said buildings, which belongs to Rouse, Hazard & Co. On the same day Bailey executed a declaration of trust in reference to the property, stating that he merely held the legal title for the purpose of executing deeds, collecting money from the sales of lots in said ten acres from purchasers furnished by Rouse and Hazard, and turning such money over to Joseph Miller & Sons, to be credited by them upon their indebtedness against the property, until the said indebtedness is paid.

On October 24, 1898, the sheriff, under an execution against Rouse, Hazard & Co., sold to William Jack, acting for the judgment creditors, the fixtures involved in this suit, together with bicycles, office furniture, machinery, etc., then located in the building heretofore mentioned, and executed a bill of sale to Jack therefor. The sheriff took possession of the property levied upon at the time of making his levy and remained in possession until the sale. Jack was notified at the sale, before the property was bid off to him, by a representative of appellees, that appellees claimed the property in controversy as fixtures attached to the building.

On November 4, 1898, appellees and Nicholas Ulrich, trustee, filed a bill in the circuit court of Peoria county to foreclose the trust deed of January 2, 1896, in which it is alleged that the fixtures here involved are part of the realty and are covered by said trust deed; sets up

the sale by the sheriff to Jack; alleges that Jack claims the right to remove them, and asks for an injunction against him for the purpose of preventing such removal.

On January 3, 1899, William Jack, trustee, sold to the Peoria Rubber and Manufacturing Company the property purchased by him at the sheriff's sale.

On January 6, 1899, Theodore J. Miller, Charles W. Constantine (who is not shown to have had any title) and Oliver J. Bailey, by quit-claim deed, conveyed to Joseph Miller and Frank Miller the said ten acres, and on the same date the two persons last named, appellees here, entered into an agreement with the Peoria Rubber and Manufacturing Company for the sale to it of said ten acres and the delivery of a deed therefor upon its making certain payments thereon for the period of two years. By stipulation in the record it is agreed that this company did not make the payments as required.

On January 24, 1899, the foreclosure suit above referred to was dismissed by the complainant.

On April 27, 1899, the Peoria Rubber and Manufacturing Company sold to A. G. Seiberling the property bought by it from Jack, which sale was evidenced by a bill of sale, and on October 27, 1901, A. G. Seiberling sold to Monroe Seiberling, the appellant, the same property, and a bill of sale was given therefor.

By a stipulation of record between the parties to this suit, dated November 7, 1901, it was agreed that Monroe Seiberling surrendered the possession of the premises in question without prejudice to the rights of the parties to try the question of title as to the fixtures mentioned in the declaration, and by another stipulation, made on the same day, the property is to be treated as severed from the real estate by appellant.

On November 7, 1901, appellees commenced a suit in replevin in the circuit court of Peoria county against appellant for certain boilers, engines, smoke-stack, condensers, heaters, boiler feed, pumps, dynamo, wiring,

heating system, shafting, belting and pulleys, fire hydrants, fire extinguishers and water pipe, being a part of the property covered by the various bills of sale. The declaration alleges that defendant took and unjustly detains said goods. Pleas of *non cepit, non detinet,* property in defendant, property in A. G. Seiberling, property in the Peoria Rubber and Manufacturing Company, and property in the Consolidated Motor Vehicle Works, were filed, and replications filed by plaintiffs to these pleas. The case was tried before the court without a jury and judgment of guilty rendered against the defendant. A motion for a new trial was made and overruled, an appeal taken to the Appellate Court for the Second District and the judgment of the circuit court there affirmed, and a further appeal taken to this court.

The evidence is conflicting as to whether the fixtures in question can be removed without material injury to the buildings. Only two witnesses testified in reference thereto, one for the plaintiffs and one for the defendant. Plaintiffs' witness gave a detailed description concerning the manner in which the different fixtures were fastened to the floors and walls of the buildings, and stated that they could not be removed without tearing down the walls and materially injuring the buildings. Appellant's witness, without detailing the manner of fastening, stated that in his opinion all the articles could be removed without injuring the buildings. They have never been actually severed from the freehold since they were attached by Rouse, Hazard & Co.

Numerous propositions of law were offered by both parties. The court held those offered by appellees and refused those offered by appellant. The errors relied on for a reversal here, are the holding and refusing of these propositions by the court and the admission of improper evidence.

For the purposes of this suit, in accordance with the stipulation of the parties, the property in controversy

is regarded as having been severed from the land by appellant.

STEVENS, HORTON & ABBOTT, and JACK, IRWIN, JACK & DANFORTH, for appellant.

WINSLOW EVANS, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

It is unnessary to determine whether Rouse, Hazard & Co. or William Jack had the right to sever from the freehold the property involved in this suit. In January, 1899, the Peoria Manufacturing Company succeeded to such rights as Jack had, and entered into a contract with the appellees for the purchase of the real estate on which the property involved was located, and thereafter continued in possession of such real estate under that contract until it made default in payment of installments of the purchase price. It was a vendee in possession and the equitable owner of the real estate. The property in question was at the same time on this real estate and attached to the freehold in the most substantial manner. Much of it could not be removed except by destroying masonry and cutting through brick walls. The fiction, based upon an implied condition in the contract between Rouse, Hazard & Co. and Theodore J. Miller, whereby it is claimed this property had continued to be personal property up to that time, if it ever had any legal existence was then at an end. After the execution of the contract between the Peoria Manufacturing Company and appellees, it is not charged that appellees, who were the vendors, were guilty of any default in the performance of that contract. The situation is no more favorable to appellant than if the Peoria Manufacturing Company had actually placed this property upon and attached it to the freehold under its contract of purchase.

The authorities cited by appellant in reference to the right of a vendee to remove improvements of this charac-

ter placed by him upon the real estate where the vendor fails to perform his contract by conveying the title are not in point so far as this transaction is concerned, for the reason that appellees did not fail or refuse to perform their contract.

"Articles annexed or structures erected by a vendee of land who is in possession by virtue of his contract of purchase but who has not yet obtained title to the premises cannot be removed by him without the consent of the vendor, the presumption being, from his interest under his contract and expectation of acquiring absolute title, that he intended the articles or structures to be part of the land." 13 Am. & Eng. Ency. of Law, (2d ed.) p. 672; *Dooley* v. *Crist,* 25 Ill. 551; *Smith* v. *Moore,* 26 id. 392; *Ogden* v. *Stock,* 34 id. 522; *Salter* v. *Sample,* 71 id. 430.

The objections urged to this view are, first, that the alleged contract between appellees and the Peoria Manufacturing Company was improperly admitted in evidence because it does not purport to be signed by that company. The basis of this objection is, that in the signature the letters "Mfg." appear instead of the word "Manufacturing." This objection is too technical. The letters are an abbreviation of the word, and are no more subject to criticism than the use of the abbreviation "Co." for the word "Company." A further objection to the admission of the contract was, that it is not under the seal of the corporation. This objection is held not well taken in the opinion of this court in *B. S. Green Co.* v. *Blodgett,* 159 Ill. 169.

It is then said that at the time this contract was made the Peoria Manufacturing Company was in possession of the real estate, and that appellees never had possession and never had title, and could not give possession nor comply with their contract of sale, consequently the contract was without consideration, and void. The answer to this is two-fold: The company was not, in any legal sense of the term, in possession of the real estate. The

possession of Rouse, Hazard & Co. was never transferred by it to anyone, nor did Jack transfer any possession of the real estate to the Peoria Manufacturing Company. It is true, he says he had a custodian in possession of the property he purchased; but his possession was in nowise different from that of one who has personal property stored on the real estate and in the building of another. His possession was no more than that of the sheriff, who levied on the property on the theory that it was personal property. He could not be held to be in possession of the real estate by virtue of such a levy. One of the managers of the manufacturing company testified that it was in possession of the real estate for about two years under the contract of purchase, which shows that they were in possession by virtue of that contract. The contract itself provides that if the company fails to make any two of the payments mentioned, within two years from February 15, 1899, appellees shall have a right to take possession of the premises.

It is urged that when Rouse, Hazard & Co. took possession of the real property under its contract it became the equitable owner thereof, and that it, or its trustee in bankruptcy, so continues to the present time, and that consequently the manufacturing company had a right to act on the theory that appellees were not the owners of the real estate, could not convey the title thereto, and that it therefore was under no obligation to perform its contract, and had a right to remove the property involved in this suit. Rouse, Hazard & Co. had a right to bring a suit in equity to compel Theodore J. Miller to convey to it the fee simple title to this property. It also had a right to abandon the possession and equitable ownership, and rely upon a suit at law for damages on the contract with Theodore J. Miller, the performance of which by him was guaranteed by one Constantine and by Seiberling, the appellant herein, neither of whom is shown to be insolvent. Under such circum-

stances, Rouse, Hazard & Co. would cease to be the equitable owner of the real estate. It is apparent that it did abandon the possession, and under the evidence in this case we cannot hold that it continued to be the equitable owner of the real estate. The record fails to show that appellees could not convey a good title to the manufacturing company.

It is said that no forfeiture of this contract with the manufacturing company was declared. That was wholly unnecessary. The question is whether this property became a part of the freehold. It is stipulated that the manufacturing company defaulted in its payments. The possession of the realty was surrendered to appellees. Whether they formally declared a forfeiture is immaterial.

Upon the undisputed facts of this case these fixtures are part of the real estate.

Six propositions of law were held at the request of appellees. The record does not show any exception to this action of the court, and we are therefore precluded from reviewing it.

The propositions submitted by appellant are fourteen in number and occupy seven pages of the abstract. They were all refused. We have carefully examined each. Their number and length forbid a detailed discussion of them in this opinion. It follows from the views which we have above expressed that the first, second, third, fourth, fifth, sixth, ninth, tenth, eleventh and twelfth of these propositions, if they be otherwise correct, are neither of them controlling in this case, and their refusal was therefore not error. The eleventh is also objectionable for the reason it presents a mixed question of law and fact. We regard the seventh, eighth, thirteenth and fourteenth as incorrect statements of the law.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*