## MILTON DAIRY CO. v. WILLCUTS, Collector of Internal Revenue.

(Circuit Court of Appeals, Eighth Circuit. September 25, 1926.)

No. 7235.

1. **Internal revenue** ⊚⟹7(10), 9(27)—**The term "invested capital," as used in Revenue Act 1918, § 326a(3), being Comp. St. § 6336⅞₁₆i, is unique and arbitrary, and means only the items there specified as constituting invested capital.**

By Revenue Act 1918, § 326a(3), being Comp. St. § 6336⅞₁₆i, paid-in or earned surplus and undivided profits are made a part of the invested capital of that section for the purpose of computation of income and excess profits taxes, and the invested capital of that section is not the same, has not the same meaning, and is not equivalent to the common, ordinary invested capital of commerce, but is unique and arbitrary, and means only the items there specified as a part of that invested capital.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital Invested.]

2. **Internal revenue** ⊚⟹7(10), 9(27)—**Previous impairment of original capital does not deprive corporation of right to allowance of earned surplus or undivided profits as part of its invested capital in computing income and excess profits taxes (Revenue Act 1918, § 326a[3], being Comp. St. § 6336⅞₁₆i).**

A corporation, which has employed in its business during a tax year surplus or undivided profits earned prior to that year, is not deprived of the right to have the amount considered a part of its invested capital for the purpose of computing its income and excess profits taxes under Revenue Act 1918, § 326a (3), being Comp. St. § 6336⅞₁₆i, because a previous operating loss had impaired its original capital, which has not been made good.

In Error to the District Court of the United States for the District of Minnesota; Joseph W. Molyneaux, Judge.

Action by the Milton Dairy Company against L. M. Willcuts, Collector of Internal Revenue for the District of Minnesota. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

For opinion below, see 8 F.(2d) 178.

Ira C. Oehler, of St. Paul, Minn. (Haydn S. Cole and Frederic D. McCarthy, both of St. Paul, Minn., on the brief), for plaintiff in error.

John R. Wheeler, Sp. Atty., Internal Revenue Bureau, of Washington, D. C. (Lafayette French, Jr., U. S. Atty., and L. W. Scott, Asst. U. S. Atty., both of St. Paul, Minn, and A. W. Gregg, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and WOODROUGH and SCOTT, District Judges.

SANBORN, Circuit Judge. The plaintiff, the Milton Dairy Company, was liable to pay and paid income and excess profits taxes for the fiscal year ending February 28, 1919, and also for the fiscal year ending February 28, 1920, which it claimed were excessive to the amount of $1,804.19, and it seeks by this action to recover this amount from the defendant, the collector.

Pursuant to the established methods of ascertaining the amount of its income and excess profits taxes, it made a return and statement of the income for each of these two years, and deducted therefrom the "invested capital" of section 326 (a) of the Revenue Act of 1918, 40 Stat. pp. 1058, 1092, 1093 (Comp. St. § 6336⅞₁₆i). The Congress by that act specified the items that might lawfully be thus deducted, and declared them to be parts of the "invested capital" of that act. Therefore the increase of this "invested capital" necessarily decreased the taxable income and the tax, and the decrease of this "invested capital" increased the taxable income and tax, of the plaintiff for each of these years.

Section 326 (a), so far as relevant to the question in this case, provided:

"That as used in this title the term 'invested capital' for any year means * * *

"(1) Actual cash bona fide paid in for stock or shares;

"(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares; * * *

"(3) Paid-in or earned surplus and undivided profits, not including surplus and undivided profits earned during the year."

The plaintiff had a net income of $11,489.26 in the fiscal year ending February 28, 1918, which remained undivided and undistributed in use in its business during the years 1919 and 1920, and a net income of $22,908.14 in the fiscal year ending February 28, 1919, which remained undivided and undistributed in use in its business during the year 1920. In making its return and statement of its income and profits for the fiscal year 1919, it stated and claimed this $11,489.26 undivided profits as part of its "invested capital" of that year; and in making its return and statement of its income and profits of the year 1920, it stated and claimed this $22,908.14 undivided profits as part of its "invested capital" of that year. The Commissioner of Internal Revenue dis-

allowed these claims, and these disallowances resulted necessarily in an increase of the plaintiff's income and excess profits taxes for the fiscal years 1919 and 1920 by $1,804.-19, which it paid under protest and brought this action to recover.

The only justification for these disallowances is the fact that in the fiscal year 1917 the plaintiff sustained a disastrous operating deficit in the conduct of its business, which depleted its prior capital $70,296.12; and this declaration in Regulations .45, article 838: "There can, of course, be no earned surplus or undivided profits until any deficit or impairment of paid-in capital due to depletion, depreciation, expense, losses, or any other cause has been made good;" and the fact that Holmes on Federal Taxation, page 728 of the 1919 edition, and page 1057 of the 1922 edition, prints the substance of this article 838 in the words thereof.

On the other hand, however, article 860 of Regulations 45, Revised, declares that "capital or surplus actually paid in is not required to be reduced because of an impairment of capital in the nature of an operating deficit, except where there has been directly or indirectly a liquidation or return of their investment to the stockholders, in which case full effect must be given to any liquidation of the original capital."

The argument in support of the Commissioner's ruling and his decision in this case is that the allowance and the deduction of undivided profits of any fiscal year is conditioned by an excess of the value of the assets of the taxpayer over its liabilities at the end of that fiscal year, and the practical effect of the imposition of such a condition is to exclude and except from the benefit of the deduction of "undivided profits," as part of the "invested capital" of section 326 (a) in the process of computing their taxable income and excess profits, all taxpayers of income and excess profits the value of whose assets through operating deficits or unfortunate losses in prior years have become less than their liabilities at the end of any subsequent fiscal year.

But the Congress, by declaring undivided profits parts of invested capital by section 326 (a), seems to have granted this deduction to all payers of taxes on income and excess profits, without excepting those whose assets did not exceed their liabilities, and without the condition imposed by the ruling of the Commissioner. There is certainly no expressed exception in the statute of taxpayers whose assets are less than their liabilities from the benefits of the grant, and no expressed condition that the assets of the beneficiaries must equal or exceed their liabilities. As the Congress did not expressly make any such exception, or impose any such condition, the legal presumption is that it did not intend so to do. There are other considerations persuasive of that conclusion.

[1] By section 326 (a) (3) paid-in or earned surplus and undivided profits are made a part of the invested capital of that section, and the invested capital of that section is not the same, has not the same meaning, and is not equivalent to the common, ordinary, invested capital of commerce, but is unique and arbitrary, and means only the items there specified as a part of that invested capital.

"The word surplus," says Mr. Justice Brandeis in Edwards v. Douglas, 269 U. S. 214, 46 S. Ct. 88, 70 L. Ed. 235, "is a term commonly employed in corporate finance and accounting to designate an account on corporate books. But this is not true of the words 'undivided profits.' The surplus account represents the net assets of a corporation in excess of all liabilities, including its capital stock. This surplus may be 'paid-in surplus,' as where the stock is issued at a price above par; it may be 'earned surplus,' as where it was derived wholly from undistributed profits; or it may, among other things, represent the increase in valuation of land or other assets, made upon a revaluation of the company's fixed property. * * * By most corporations the term 'undivided profits' is employed to describe profits which have neither been distributed as dividends nor carried to surplus account upon the closing of the books; that is, current undistributed earnings." And that was the meaning upon which the decision in that case was based. And it seems certain that surplus in the sense of the excess of the value of assets over liabilities is not the same as the surplus or the undivided profits of section 326 (a), and does not necessarily condition the existence of either of them, and that a taxpayer may have at the close of a fiscal year the undivided profits of section 326 (a), although it has no surplus of assets over liabilities and no earned surplus. In other words, it may have * * * undivided profits of a fiscal year insufficient to constitute earned surplus, and it evidently was to grant the just deduction on account of such undivided profits that the Congress provided that earned surplus *and* undivided profits, not earned surplus *or* undivided prof-

its, should constitute parts of the invested capital of that section.

[2] It is well settled that the dominant purpose and practice of Congress in imposing taxes on income and excess profits was to place· the peculiar burden of these taxes on a graduated scale, so that the heavier portion of the burden thereof should fall on those best able to bear them. The exception introduced by the Commissioner of those payers of income taxes on excess profits who have been so unfortunate as to have suffered in earlier years depletion of their original business capital and have been unable to restore it, from the benefit of the deductions granted to them by Congress by section 326 (a), runs counter to that purpose and practice, and tends to place the heavier burdens of these taxes on those less able to bear them. If the Milton Dairy Company had not sustained its unfortunate operating deficit of 1917, and thereby the depletion of its business capital, it would have enjoyed the benefit of the deductions granted to it by section 326 (a) (3) on account of its undivided profits of the fiscal years ending February 28, 1919, and February 28, 1920, and would not have been compelled or asked to pay the $1,804.19 here in controversy.

Nor is this the worst of it. If this exception continues in force and in operation, and the plaintiff remains unable to restore its original business capital, it must continue to lose the benefit of this grant of deductions on account of its future undivided profits and to pay these excessive taxes on account of its misfortune, and other payers of income taxes and excess profits in like situation, whose capital has been depleted by unfortunate losses in earlier years and has not been restored must submit to like penalties for those misfortunes. We find no warrant for such an exception in the acts of Congress, nor are we persuaded that the members of Congress ever intended to authorize or permit such an exception or practice.

Taxes on income and excess profits are annual taxes. The required return, statement, computation, and amount for each year are separate and distinct from those of every other year. The undivided profits of section 326 (a) (3) are the undivided profits of the single fiscal year for which the return is made, excepting the surplus and undivided profits earned during that year. The Congress provided that such undivided profits of each fiscal year should constitute parts of the invested capital of that section, and thereby granted proportionate reductions of the income of the taxpayer in the process of ascertaining its taxable income and excess profits, and in our opinion it was not and is not within the lawful jurisdiction or power of the administrative officers, or of the courts, of the United States to make such an exception from, or impose such a condition upon, that grant. Lynch v. Alworth-Stephens Co., 267 U. S. 364, 45 S. Ct. 274, 69 L. Ed. 660.

Let the judgment below be reversed, and let the case be remanded to the court below, with instructions to grant a new trial.