## SIMMONS CO. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, First Circuit.
May 31, 1929.

No. 2322.

Phillips Ketchum and Merrill G. Hastings, both of Boston, Mass. (Herrick, Smith, Donald & Farley, of Boston, Mass., on the brief), for petitioner.

Allin H. Pierce, of Washington, D. C. (Mabel Walker Willebrandt, Asst. Atty. Gen., J. Louis Monarch and Andrew D. Sharpe, Sp. Asst. Attys. Gen., and C. M. Charest, General Counsel Bureau of Internal Revenue, of Washington, D. C., on the brief), for respondent.

Before BINGHAM and ANDERSON, Circuit Judges, and HALE, District Judge.

ANDERSON, Circuit Judge. On December 15, 1924, the Commissioner of Internal Revenue notified the petitioner of deficiencies in its income and profits taxes for 1919 of $222,319.71, and for 1920 of $61,327.77. On appeal to the Board of Tax Appeals, the deficiencies for 1919 and 1920 were redetermined as $188,383.20 and $29,298.62, respectively. On appeal to this court, the main contentions are: That commissions paid by the taxpayer on the sale of its own capital stock are, under section 234(a) (1) of the Revenue Act of 1918, chap. 18, 40 Stat. 1057, 1077, "deductible as ordinary and necessary expenses incurred * * * in carrying on" its "trade or business"; and that, if not so deductible, such commissions should be included as part of its invested capital under section 326(a), 40 Stat. 1092. Thus included, they increase the amount on which the taxpayer is entitled to normal profits, and hence tend to reduce its tax.

The facts out of which this appeal grows are as follows: In 1917 the petitioner issued 20,000 shares of preferred stock ($2,000,000 par value), which were sold to bankers for $87.50 per share. The bankers sold this stock to the public at $95 per share. The corporation actually received $1,750,000. It charged the difference of $250,000 as an expense.

In August, 1919, the petitioner redeemed the entire 20,000 shares at $110, and made a new issue of 70,000 shares, paying the bankers $525,255 in connection with the sale of this stock. This sum was also charged as an expense. This stock was in part sold to the public at $97 per share, and in part exchanged for the old issue on terms not now material.

Deducting the discount of three points on 70,000 shares ($210,000), the net commission to the bankers was $315,255. This sum, petitioner strenuously urges, should be deducted from its gross income for 1919 as an "ordinary and necessary" expense within the meaning of section 234(a), supra.

1. The Board adhered to its previous rulings in the appeal of Charles H. Lilly Co., 2 B. T. A. 1058, and Emerson Mfg. Co., 3 B. T. A. 932; and held that bankers' commissions paid for a sale of shares were not deductible as "ordinary and necessary expenses in carrying on the business."

We think this ruling was right, for the reasons adequately stated in the Emerson Mfg. Co. Case, 3 B. T. A. 932. While expenses for organization or for obtaining additional capital are frequent in growing and successful enterprises, we think it clear that

they are not "ordinary and necessary expenses" in the productive operations of such concerns within the meaning of the tax laws.

If the language used seemed to us doubtful (as it does not), the practically contemporaneous construction by the Treasury Department in its regulations would require us to exclude expenses incident to the organization of a corporation and the sale of its capital stock as being within the fair meaning of "ordinary and necessary expenses incurred in carrying on the business" of such corporation. In effect, the regulations limit deductible expenses to the current operating expenses incurred in producing the income. See articles 21, 101, 582. The case in that regard falls under the familiar rule that contemporaneous construction given to an Act of Congress by the executive officers charged with its enforcement, though not controlling, is entitled to great weight. Baltzell v. Mitchell (C. C. A.) 3 F.(2d) 428, 430; compare National Lead Co. v. United States, 252 U. S. 140, 146, 40 S. Ct. 237, 64 L. Ed. 496, where the Supreme Court points out the addititonal weight attaching to such construction from the fact that Congress has, by subsequent legislation, given it implied approval. The construction that only operating expenses are deductible under section 234(a) (1) was being applied by the Treasury Department when Congress re-enacted the provision, in unchanged form, in the Revenue Acts of 1921, 1924, 1926, and 1928. 42 Stat. 254; 43 Stat. 283; 44 Stat. 41; 45 Stat. 799 (26 USCA §§ 986, 2023). See, also, Brewster v. Gage (C. C. A.) 30 F.(2d) 604, 606.

2. The petitioner's second contention (illustrated by its claim) that the payment of $150,000 as a commission for the sale of the first issue of $2,000,000 of preferred stock is "something in the nature of an intangible asset in some way or other associated with the dollars it was expended to secure" seems to us an untenable, far-fetched notion—inconsistent with the plain meaning of the tax statutes.

We agree with the reasoning of the Board of Tax Appeals by which it reaches the conclusion that invested capital cannot be increased by commissions paid for the sale of its stock or by discount from par to the purchasers of the stock. Section 326(a) reads:

"That as used in this title the term 'invested capital' for any year means; * * *

"(1) Actual cash bona fide paid in for stock or shares;

"(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares; * * *

"(3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year;

"(4) Intangible property bona fide paid in for stock or shares prior to March 3, 1917; * * *

"(5) Intangible property bona fide paid in for stock or shares on or after March 3, 1917. * * *" 40 Stat. 1092.

By necessary implication, this enumeration of items of what is "invested capital" excludes commissions paid by a corporation for the sale of its own stock. Such commissions obviously decrease the amount of capital available for the business operations of the concern. They contrast with the ideas contained in "actual cash," "actual cash value of tangible property," "paid in or earned surplus and undivided profits." All these add to the resources of the corporation. Commissions paid for marketing stock simply diminish the net return from the stock issue. Financially, they are equivalent to an issue of stock at a discount from par; the par value must be carried as a liability without an off-setting, equal, amount of cash or property.

The statutory concept as to what is "invested capital" is clear. See LaBelle Iron Works v. United States, 256 U. S. 377, 41 S. Ct. 528, 65 L. Ed. 998; Willcuts v. Milton Dairy Co., 275 U. S. 215, 48 S. Ct. 71, 72 L. Ed. 247, reversing the Court of Appeals for the Eighth Circuit in 15 F.(2d) 814.

The language used in LaBelle Iron Works v. United States, 256 U. S. 377, 378, 41 S. Ct. 528, 65 L. Ed. 998, quoted with approval in Willcuts v. Milton Dairy Co., 275 U. S. 215, 219, 220, 48 S. Ct. 71, 72 L. Ed. 247, is conclusive against the petitioner's contention.

The decision of the Board of Tax Appeals is affirmed.